## IN THE COURT OF COMMON PLEAS OF
## LACKAWANNA COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| Pompey Coal Company | : | |
| Plaintiff | : | |
| | : | NO.: 19-CV-2461 |
| v. | : | |
| | : | |
| Borough of Jessup, Gerald J. Crinella, | : | |
| Individually and in his official capacity as | : | |
| President of Jessup Borough Council; | : | |
| Joseph M. Mellado, Individually and in his | : | JURY TRIAL DEMANDED |
| official capacity as Vice President of Jessup | : | |
| Borough Council; Gregg Betti, Individually | : | |
| and as a member of Jessup Borough Council; | : | |
| Roberta Galati, Individually and as a | : | |
| member of Jessup Borough Council; Kevin | : | |
| M. Gordon, Individually and as a member of | : | |
| Jessup Borough Council; Peter Larioni, | : | |
| Individually and as a member of Jessup | : | |
| Borough Council; and Lorraine Stevens, | : | |
| Individually and as a Member of Jessup | : | |
| Borough Council | : | |
| Defendants | : | |

MAURI B. KELLY
LACKAWANNA COUNTY
2020 FEB -7 P 2: 23
CLERK OF JUDICIAL
RECORDS CIVIL DIVISION

## **COMPLAINT**[1]

Plaintiff, Pompey Coal Company ("Pompey Coal"), by and through its counsel,

James J. Scanlon, Esq. and Ridley, Chuff, Kosierowski & Scanlon, P.C., hereby files a

Complaint in Civil Action against Jessup Borough Council, Gerald J. Crinella,

individually and in his official capacity as President of Jessup Borough Council, Joseph

M. Mellado, individually and in his official capacity as Vice President of Jessup Borough

Council, Gregg Betti, individually and as a member of Jessup Borough Council, Roberta

Galati, individually and as a member of Jessup Borough Council, Kevin M. Gordon,

---

[1] This matter was initiated by the filing of a Writ of Summons in the Lackawanna County Court of
Common Pleas on April 24, 2019. On May 1, 2019, the Court granted Pompey Coal's Motion for Leave to
Conduct Pre-Complaint Discovery and permitted Pompey Coal to conduct the deposition of Defendant,
Gerald J. Crinella, for a limited purpose.

individually and as a member of Jessup Borough Council, Peter Larioni, individually and as a member Jessup Borough Council, and Lorraine Stevens, individually and as a member of Jessup Borough Council (hereinafter, collectively, the "Defendants") alleging as follows:

## PARTIES

1.   Plaintiff, Pompey Coal Company, is a Pennsylvania business corporation with a principle place of business located at 520 Spruce Street, Scranton, Pennsylvania 18503. Pompey Coal Company is a large commercial land-owner that owns land within the Borough of Jessup, Pennsylvania in an M1-A Business Park.

2.   Defendant, Borough of Jessup (the "Borough"), is a Pennsylvania municipal corporation located within Lackawanna County with a principle office and place of business at 395 Lane Street, Jessup, Pennsylvania 18434.   The Borough of Jessup is governed by a Borough Council comprised of seven (7) members along with a duly elected mayor.

3.   Defendant, Gerald J. Crinella ("Crinella"), is an adult individual with a primary residential address at 1204 Tonwin Street, Jessup, Pennsylvania and serves as the President of Jessup Borough Council.

4.   Defendant, Joseph M. Mellado ("Mellado"), is an adult individual with a primary residential address at 111 Hill Street, Jessup, Pennsylvania and serves as the Vice-President of Jessup Borough Council.

5.    Defendant, Gregg Betti ("Betti"), is an adult individual with a primary residential address at 599 Powell Avenue, Jessup, Pennsylvania and serves as a Member of the Jessup Borough Council.

6.    Defendant, Roberta Galati ("Galati"), is an adult individual with a primary residential address at 616 Church Street, Jessup, Pennsylvania and serves as a Member of the Jessup Borough Council.

7.    Defendant, Kevin M. Gordon ("Gordon"), is an adult individual with a primary residential address at 146 Buttonwood Street, Jessup, Pennsylvania and serves as a Member of the Jessup Borough Council.

8.    Defendant, Peter Larioni ("Larioni"), is an adult individual with a primary residential address at 1123 Church Street, Jessup, Pennsylvania and serves as a Member of the Jessup Borough Council.

9.    Defendant, Lorraine Stevens ("Stevens"), is an adult individual with a primary residential address at 106 Grassy Island Avenue, Jessup, Pennsylvania and serves as a Member of the Jessup Borough Council.

**JURISDICTION AND VENUE**

10.  Jurisdiction of this matter is in the Court of Common Pleas pursuant to 42 Pa.C.S.A. § 931.

11.  Venue is appropriate in the Lackawanna County Court of Common Pleas pursuant to Pennsylvania Rule of Civil Procedure 1006 since the transactions from which this action arises occurred in Lackawanna County, Pennsylvania.

## FACTUAL BACKGROUND

### *The Borough of Jessup and its M-1A Business Park Zone*

12.     The Borough of Jessup, Pennsylvania is a duly incorporated borough located in Lackawanna County, Pennsylvania.  The Borough is governed by an elected Council comprised of seven (7) members along with a duly elected mayor.

13.     The Borough consists of a geographical area of 6.75 square miles of established residential and manufacturing zones.  The Borough's manufacturing zones include railway tracks, a highway thru-way (the "Casey Industrial Highway"), and high-powered electrical lines.

14.     In the 1990's, the Pennsylvania Department of Transportation designed, developed, and constructed the "Casey Industrial Highway" which traverses the Borough, specifically along the Borough's established M-1A Business Park zones.

15.     At the time that the "Casey Industrial Highway" was being designed, the Borough participated with the Lackawanna County government (the county wherein the Borough lies) in developing an integrated comprehensive plan for the Borough's lands that would parallel the planned "Lackawanna Valley Corridor Plan."  The "Lackawanna Valley Corridor Plan" was established by the Borough in Resolution 8 of 1996. to promote its geographical intersection with the Boston-Washington corridor due to its proximity to U.S. Interstate 81.

16.     Thereafter in 1998, the Borough developed and adopted its own Comprehensive Plan, *Comprehensive Plan Update 1995-2010*, that established and expanded its M-1A Business Park zones within the Borough.

17.     The Borough's establishment and expansion of its M-1A manufacturing zones led to the development of the Jessup Small Business Center, consisting of 132 developed acres (part of a 1,300-acre tract) created by The Scranton Lackawanna Industrial Building Company along with the development and construction of the Valley View Trade Center. The Borough promoted these business and development projects as a way to drive business and tax revenue into the Borough.

*Pompey Coal Company*

18.     Pompey Coal was formed in 1931 and is a real estate holding company that owns significant real estate in Northeastern Pennsylvania, particularly within the Borough's M-1A Business Park zones. William "Billy" Rinaldi, is the President of the company.

19.     All of Pompey Coal's real estate owned within the Borough lies within an M-1A Business Park zone.[2] The Borough's present and existing Comprehensive Plan, *Comprehensive Plan Update 1995-2010*, establishes and confirms that the areas owned by Pompey Coal are within the Borough's M-1A manufacturing zone.

20.     On April 13, 2016, Pompey Coal sold 65.35 acres of its duly owned real estate within the Borough's M-1A manufacturing zone to Lackawanna Energy, LLC ("Lackawanna Energy"). Lackawanna Energy owns and operates power plants and focuses on clean energy generation and manages gas powered turbines, heat recovery and steam turbines.

---

[2] The Borough's Zoning Ordinance at Article 3 §§ 3.50 and 3.51-3.54 establishes by definition the permitted manufacturing and business uses for the Borough's designated M1-A Business Park areas. Some of these uses include, but are not limited to: warehousing and distribution; metal fabrication including structural steel shops and machine shops; large scale industrial/manufacturing development; and, large scale commercial development. *See* Jessup Borough Zoning Ordinance, Article 3 §§ 3.50 and 3.51-3.54.

21.     Subsequent to Pompey's sale of the Property to Lackawanna Energy, Lackawanna Energy developed a natural gas-fired electric generating plant on the Property. The gas-fired electric generating plant produces electricity for a regional power grid. Lackawanna Energy's plant was constructed from 2016 to 2018 and became fully operational in January 2019. The Defendants became outraged that Pompey Coal sold its land to Lackawanna Energy and vowed to stop any future sale of land by Pompey Coal to a third-party.

22.     Pompey Coal owns an additional 198 acres of land within the Borough's M-1A Business Park zone (the "Property"). In 2016, the Borough approved a sub-division of the Property (the 198 acres) and since that time, Pompey Coal has marketed it for the development in conformity with the M1-A Business Park designation. Pompey Coal's Property is also located within a designated federal qualified opportunity zone that permits a landowner to defer tax on prior gains in value until December 21, 2026. Qualified Opportunity Zones were created by the 2017 federal Tax Cuts and Jobs Act. These zones were designed to spur economic development and job creation in distressed communities such as Jessup Borough by providing tax benefits to investors who invest eligible capital into these communities.

23.     In the Spring of 2018, Pompey Coal and Northpoint Development, LLC ("Northpoint") began negotiations for the potential sale of Pompey Coal's Property remaining M-1A commercial space to Northpoint. Northpoint is interested in developing the land into a distribution center based upon its close proximity to railroad, highway (I-81 Boston-Washington corridor), and air transportation.

24.     On October 1, 2018, Northpoint agreed to purchase approximately 183 acres of M1-A land within the Borough from Pompey Coal for $3,500,000.

25.     Pompey Coal and Northpoint agreed to a sixty (60) day Due Diligence period prior to signing the full Agreement of Sale.

*Defendants' efforts to stop Pompey Coal's Sale and Development of Land*

26.     In late Spring/early Summer 2018, Crinella told members of Jessup Borough Council and members of the public that "Billy Rinaldi has enough money" and that the government needed to change the zoning ordinance in order to stop Pompey Coal from selling its land to third-party businesses. At the same time, the Defendants were engaged in negotiations with a company named Trammell Crow Company to assist in its purchase of 92 acres of commercial land space within its M-1A Business Park zone in order to create the Valley View Trade Center in the Borough of Jessup.

27.     At the same time that the Defendants were creating tax incentives for the sale of land within the Borough's M-1A Business Park zoning areas, the Defendants knowingly, willfully, and intentionally engaged in an effort to thwart any and all efforts by Pompey Coal to sell its commercial real estate and/or develop its land as commercial space by engaging in a personalized and selective course of rogue or "special" legislation to negatively impacted Pompey Coal's land.

28.     For example, in November 2018, Trammell Crow Company paid a separate Borough landowner, Scranton Lackawanna Industrial Building Company, or SLIBCO, an amount of $8,281,800 for land it owned in the Borough's M-1A Business Park zone.

29.     As incentive to develop its commercial space within the Borough, the Borough and Defendants provided Trammell Crow Company with Local Economic Revitalization Tax Assistance whereby Trammel Crow Company would only pay 5% of taxes for its site improvement for a 10 year term.

30.     In or around July 2018, the Defendants, through its Council, began to consider a re-zoning and re-mapping of land within and around the Borough's M-1A Business Park zones, including the property that Pompey Coal sold to Lackawanna Energy and the additional Property owned by Pompey Coal that it intended to sell to Northpoint.

31.     The Defendants' initial discussions concerning a re-zoning and re-mapping occurred in the summer of 2018 and were outside of the public purview and such meetings were never "advertised" nor were members of the public invited to attend and/or comment. These actions and inactions by the Defendants were knowing, willfull and intentional violations of Pompey Coal's constitutional and statutory rights.

32.     As retaliation for Pompey Coal's sale of its land to Lackawanna Energy and in knowing, willful, and intentional disregard of Pompey Coal's constitutional and statutory rights, the Defendants set forth an unconstitutional and tortious course of events that harmed Pompey Coal.

*Defendants' Constitutional Violations*

33.     On July 31, 2018, the Borough entered into a contract with the Urban Research and Development Corporation (the "URDC") "to prepare a Comprehensive Plan and New Zoning Ordinance for Jessup Borough." *See* URDC Contract, attached hereto as Exhibit "A."

34.     As part of the contract, URDC agreed to provide comprehensive plan and zoning ordinance revision services to the Borough for forty-eight thousand ($48,000) dollars.  The URDC's "Scope of Services" specifically states that the Plan and Zoning Ordinance "will include provisions for logical transitions of land use near intensive uses and may target underused buildings and land for desirable new uses." *Id.*  The "Scope of Services" provision also provides that "URDC understands that one objective of Jessup is to promote new residential development near existing neighborhoods, while limiting new industrial uses to areas that are mainly south of the Casey Highway interchange" – an area that is owned by Pompey Coal. *Id.*

35.     The URDC set forth the following work schedule in its contract:

Review and Analysis of Existing Reports, Field Work, Photography, Key Person Interviews – Month 1

Background Information and Mapping, and Internal Workshop Meetings – Months 2 & 3

Preparation of Goals and Objectives, and Discussion of Alternatives, and Workshop Meeting – Month 4

Develop Draft of Land Use Plan and Map, and Workshop Meetings – Months 5 and 6

Major Public Meeting to Discuss Issues and Alternative Recommendations – Month 6

Prepare Other Chapters of Comprehensive Plan and Workshop Meeting – Month 7

Update Plan Chapters and Prepare Action Plan, and Workshop Meeting – Month 8

Public Meeting by the Borough Planning Commission and County Review. Provide draft Zoning Map and Zoning Districts Text – Month 9

Prepare Updated Draft of Plan, in response to public and official comments and County Review, and Workshop Meeting. Revise the draft Zoning Map and Zoning Districts Text – Month 9

Public Hearing by the Borough Council on the Plan. Workshop Meeting on the Dimensional Requirements & Additional Requirements & Additional Requirements zoning sections – Month 11

Final Revisions to the Plan, and Borough Council Meeting to Consider Plan for Adoption. Workshop meeting on the Parking, Signs and General Regs. Section of the Zoning Ordinance – Month 12.

Final Version of the Plan that is Ready-To-Adopt – 3 weeks after receiving final comments from the Borough

Workshop to Review Remainder of Draft Ordinance (such as Definitions and Administration) – Month 13

Workshop to Review Revised Draft of Ordinance, County Review – Month 14

Planning Commission Public Meeting on Zoning Ordinance – Month 15

Borough Council Public Hearing on Zoning Ordinance – Month 16

Final Version of the Zoning Ordinance that is Ready-To-Adopt – 3 weeks after receiving final comments from the Borough

Digital and Reproducible Copies of the Plan and Ordinance – Within 3 days after adoption.

*See id.* at pp. 15-16.

36.     The URDC's schedule set forth a sixteen (16) month period for public comment and collaboration, drafting and workshops prior to the presentment of the draft Comprehensive Plan and Zoning Ordinance.

37.     Defendants, collectively and individually, knowingly, wantonly, and intentionally ignored the URDC's planned schedule and violated Pompey Coal's due process and other constitutional rights by drafting and attempting to implement a Zoning Ordinance and Zoning Map without public comment and presentment, ignoring the

Pennsylvania Municipal Code, and the time-line set forth by its own consultant, and other statutory mandates. This process was a knowing, wanton, and intentional interference with Pompey Coal's business interests, constitutional and statutory rights.

38.    On August 9, 2018 (9 days after the URDC Agreement is executed), at the Defendants' request and in contravention of its own drafting schedule set forth by the URDC contract, Crinella personally directed, without any legislative authority from Borough Council, the URDC to draft and produce to the Defendants a draft  Zoning Ordinance (Ordinance 3 of 2019 amending its Zoning Ordinance) (hereinafter the "Draft Zoning Ordinance") and Zoning Map. The URDC's "Draft Zoning Ordinance" rezoned Pompey Coal's Property from its existing zoning classification of M-1A Business Park to an R-2 (Residential) and an Interchange Activity Classification ("IAC") classification. Pompey Coal's Property would be substantially impacted by this change in zoning and effectively blocked any sale of the Property to Northpoint.

39.    On August 13, 2018, the Defendants forwarded the URDC's "Draft Zoning Ordinance" and Zoning Map to the Lackawanna County, Pennsylvania Planning Commission pursuant to Pennsylvania law. Thereafter, the Defendants submitted the "Draft Zoning Ordinance" and Zoning Map to its own Jessup Borough Planning Commission for review and approval.

40.    On August 22, 2018, the Jessup Borough Planning Commission, without any discussion, comment, or input from Pompey Coal, approved the Defendants' "Draft Zoning Ordinance" and Zoning Map and contemplated changing the Borough's zoning classification, including the area where Pompey Coal's Property is located, from an M-1A Business Park to an R-2 and an IAC classification.

41.     On August 27, 2018, the Lackawanna County Planning Commission rejected the Defendants' proposed Zoning Ordinance and Zoning Map noting the inconsistency of the proposed rezoning with the Borough's current Comprehensive Plan which designated the majority of the area, including Pompey Coal's Property, to be used as a manufacturing M-1A Zone. *See* Lackawanna County Planning Commission Report, attached hereto as Exhibit "B."

42.     The Lackawanna Planning Commission rejected the Defendants' proposed Draft Zoning Ordinance and Zoning Map as premature because the Draft Zoning Ordinance preceded the completion of a new Comprehensive Plan for the Borough.

43.     On September 5, 2018, Pompey Coal, through its attorney, notified the Defendants' Solicitor, Christopher J. Szewczyk, Esq., that it was objecting to any change in zoning that would impact Pompey Coal's Property noting that a change to R-2 and IAC would impose a severe and substantial impact in the development of Pompey Coal's Property.  Pompey Coal also notified the Defendants' Solicitor that contrary to certain public statements made to the public by the Defendants, Pompey Coal was never informed of any proposed zoning change impacting its Property and never had an opportunity to publicly participate and/or object to the proposed zoning change.  A copy of Pompey Coal's August 31, 2018 letter to the Borough's Solicitor is attached hereto as Exhibit "C."

44.     On September 1, 2018, Pompey Coal received a letter from the Defendants' Solicitor, Christopher J. Szewczyk, Esq., dated August 30, 2918 informing it that Borough Council would hold a public hearing on October 1, 2018 regarding an "Ordinance Amending Ordinance Number 3 of 1991, as Amended, Entitled the 'Jessup

Borough Zoning Ordinance,' Amending the Borough of Jessup Zoning Map and IAC Dimensional Requirements." A copy of the Defendants' Solicitor's letter dated August 30, 2018 to Pompey Coal is attached hereto as Exhibit "D."

45. On September 26, 2018, counsel to Lackawanna Energy, Ballard Spahr, LLP, put the Borough of Jessup on notice that its proposed change in the borough's existing M-1A zoning classification would amount to a violation of Lackawanna Energy's constitutional and statutory rights in addition to an outright illegal "taking" of property.

46. The Defendants never held a public hearing on October 1, 2018 to address the "Draft Zoning Ordinance."

### *Defendants' Violations of Pennsylvania Municipalities Planning Code and Enactment of Special Legislation to Block Pompey Coal Company's Sale of Land*

47. Thereafter, the Defendants scheduled a hearing on the proposed "Draft Zoning Ordinance" for March 25, 2019 and purported to advertise the hearing pursuant to the Pennsylvania Municipalities Planning Code (the "MPC") requirements of publication in newspapers of general circulation. At this time, the Defendants never prepared or submitted a change in the Borough's current Comprehensive Plan that designated the majority of the area, including Pompey Coal's Property, to be used as a manufacturing M-1A Zone

48. Specifically, the Borough's scheduled hearing for the proposed Zoning Ordinance Amendment on March 25, 2019 was published in a newspaper of general circulation, The Scranton Times/Tribune, on March 11, 2019 and March 18, 2019. Copies of the notices of hearing are attached hereto as Exhibit "E."

49.     Pursuant to the Notice of hearing the Borough held a hearing on March 25, 2019 on the proposed Ordinance, at which time Pompey Coal raised objections to the zoning amendment.

50.     On April 3, 2019, the Borough advertised the meeting date for the adoption of the Ordinance in a newspaper of general circulation, The Scranton Times/Tribune. A copy of the notice of meeting is attached hereto as Exhibit "F."

51.     Early on April 10, 2019, Pompey Coal submitted a land development plan to the Borough pursuant to Jessup's Subdivision and Land Use Ordinance in preparation of its sale of land to Northpoint.   The land development plan proposed two (2) warehouses within the Property owned by Pompey Coal, one (1) 520,00 square feet and one (1) 353,600 square feet.

52.     The Defendants adopted the Draft Zoning Ordinance on April 10, 2019 and effectively changed Pompey Coal's Property from an M1-A Business Park to an R-2 and IAC Classification.  A copy of the adopted Zoning Ordinance No. 3 is attached hereto as Exhibit "G."  At no time prior to the passage and implementation of Zoning Ordinance No. 3 did the Defendants change the Borough's Comprehensive Plan.

53.     The Notice for the public hearing for enactment of Ordinance 3 of 2019 was defective, in so far as, excluding the two terminal dates of March 18, 2019 and March 25, 2019, seven days did not elapse as required by Public Notice and Public Hearing requirements under 53 P.S. § 10609 and 53 P.S. 10107.

54.     Further, the Notice requirement for the adoption of Ordinance 3 of 2019 is also defective, in so far as, seven (7) full days did not elapse between the advertisement of Notice of adoption and Special Meeting appearing on April 3, 2019, Scranton

Times/Tribune and the adoption date of April 10, 2019, as required by 8 Pa.C.S. § 3301.2.

55.    The Borough's Planning Commission reviewed Pompey Coal's land development plan on April 24, 2019 in accordance with § 204 of the Borough's Subdivision and Land Use Ordinance and the Planning Commission voted down a motion to reject Pompey Coal's land development plan for a technical defect and afforded Pompey Coal an opportunity to supplement its submission.

56.    Notwithstanding the vote of the Borough's Planning Commission and at the direction of Crinella and Galati, the Borough Secretary forwarded a letter to Pompey Coal's attorney on May 10, 2019 rejecting Pompey Coal's land development plan. The Borough Secretary signed the name of the Borough Planning Commission's Chairperson to the Secretary Letter with a back date of May 1, 2019 and for an unknown reason no formal letter was ever issued by the Chairman of the Planning Commission. A copy of the Borough Secretary's letter is attached hereto as Exhibit "H."

57.    As a result of the Defendants' passage of Zoning Ordinance No. 3 and its rejection of Pompey Coal's land development plan, Pompey Coal is unable to finalize an agreement of sale of the Property to Northpoint for $3,500,000 because the Property no longer lies within the M-1A designated Business Park. In addition, Pompey Coal is unable to develop the two (2) warehouses because the Property no longer lies within the M-1A designated business park.

58.    The Defendants' failure to satisfy the MPC requirements prior to passing Zoning Ordinance No. 3 are knowing, willfull, and intentional and amount to retaliation

and interference with Pompey Coal's agreement with Northpoint to sell its Property as an M1-A Business Park zoned area.

59.     The Defendants' actions and inactions from July 2018 through May 10, 2019 is egregious, knowing, willfull, and intentional legislative acts that amount to constitutional, statutory and tortious violations of Pompey Coal's rights.

60.     The Defendants' legislation is unjustly discriminatory, arbitrary, unreasonable, and confiscatory in its application, in that the Defendants aimed Zoning Ordinance No. 3 and its arbitrary rejection of its land development plan at Pompey Coal's Property to do it harm.

61.     The Defendants' legislation amounts to an unlawful taking pursuant to the United States Constitution.

## COUNT I
## 42 U.S.C. § 1983 RETALIATION UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

62.     Paragraphs 1 through 61 of the Complaint are incorporated herein by reference.

63.     At all relevant times, Crinella, Mellado and Galati, through their authority as Jessup Borough officials, exercised influence and control of the other named Defendants.

64.     As a response to Pompey Coal's sale of land to Lackawanna Energy on April 13, 2016, the Defendants willfully and intentionally retaliated against Pompey Coal by implementing a zoning ordinance without publication or public hearing which amounted to an unconstitutional physical invasion and taking of private property.

65.    Defendants took these adverse actions in a willful and intentional retaliation of Pompey Coal's right to own property within Jessup Borough and the Defendants' proffered justifications for these actions are pretextual.

66.    As a result of Pompey Coal's constitutionally protected right to own property, Defendants willfully and intentionally retaliated against Pompey Coal by changing the Borough zoning classification on the land owned by Pompey Coal from an M1-A Business Park to an R-2 and an IAC classification to intimidate, harass, and interfered with Pompey Coal's right to use, develop, and sell the Property.

67.    As a result of Pompey Coal's constitutionally protected right to own property, Defendants willfully and intentionally retaliated against Pompey Coal, through their authority as Borough officials, by interfering with and/or attempting to interfere with Pompey Coal's contractual relationship with Northpoint.

68.    Defendants, by retaliating against Pompey Coal, willfully and intentionally interfered with and injured Pompey Coal's constitutional, property, and contractual rights, caused a great diminution in value of Pompey Coal's property, and caused Pompey Coal to suffer a loss of income and a loss of time and money in protecting their rights.

## COUNT II
## 42 U.S.C. § 1983 SUBSTANTIVE AND PROCEDURAL DUE PROCESS VIOLATIONS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

69.    Paragraphs 1 through 68 of the Complaint are incorporated herein by reference.

70.     At all relevant times, Crinella, Mellado and Galati, through their authority as Jessup Borough officials, exercised influence and control of the other named Defendants.

71.     Defendants repeatedly suppressed and willfully and intentionally interfered with Pompey Coal's ability to protest any proposed change in the zoning classification within which its Property lies, because the Defendants failed to advertise or conduct a public hearing pursuant to Pennsylvania law.  The Defendants' actions in implementing the zoning ordinance were arbitrary and capricious.

72.     Defendants willfully and intentionally interfered with Pompey Coal's ability to present information, protest, or communicate to the Borough of Jessup a response to the proposed zoning ordinance and zoning map.

73.     Defendants actions were intended to harass, threaten, and interfere with Pompey Coal and its property rights.

74.     Defendants, through their authority as Borough officials, knowingly, willfully and intentionally interfered with Pompey Coal's property rights and contractual relationship with Northpoint.

75.     Defendants' decision-making and use of official authority with respect to Pompey Coal was motivated by self-interest, animosity towards Pompey Coal, and a desire to harass, intimidate, threaten, and harm Pompey Coal's constitutional, property, and contractual rights.

76.     Defendants, by violating Pompey Coal's substantive and procedural due process rights, knowingly, willfully and intentionally interfered with and injured Pompey Coal's constitutional, property, and contractual rights, caused a great diminution in value

of Pompey Coal's property, and caused Pompey Coal to suffer a loss in income and a loss of time and money expended to protect their rights.

## COUNT III
## 42 U.S.C. § 1983 EQUAL PROTECTION VIOLATION

77.   Paragraphs 1 through 76 of the Complaint are incorporated herein by reference.

78.   At all relevant times, Crinella, Mellado and Galati, through their authority as Jessup Borough officials, exercised influence and control of the other named Defendants.

79.   Ordinance 3, on its face and applied to Pompey Coal, violates the Equal Protection Clause of the 14th Amendment because the Ordinance singles out Pompey Coal from other similarly situated classes of property owners impacting Pompey Coal's ability to own and sell its Property.

80.   Pompey Coal's exclusion from other property owners have a direct bearing on Pompey Coal's property and business interests and the Defendants have no compelling interest in justifying the creation of this targeted legislation negatively impacting Pompey Coal's property interests.

81.   The legislative action taken by the Defendants constitutes "Special Legislation" in violation of the constitutional and statutory protections afforded to property owners.

## COUNT IV
## 42 U.S.C. § 1983 CIVIL CONSPIRACY

82.   Paragraphs 1 through 81 of the Complaint are incorporated herein by reference.

83.    At all relevant times herein, Crinella, Mellado and Galati, through their authority as Jessup Borough officials, exercised influence and control over the other named Defendants.

84.    Upon information and belief, Defendants conspired, by agreement, to deprive, interfere, suppress, harass, threaten, intimidate, and harm Pompey Coal and their constitutionally-protected rights under the color of state authority.

85.    The Defendants, in their individual capacities, furthered, or failed to prevent, the conspiracy to deprive, interfere, suppress, harass, threaten, intimidate, and potentially harm Pompey Coal and its constitutionally-protected rights.

86.    Defendants, through their conspiracy, took overt acts in a common purpose to interfere with and injure Pompey Coal's constitutional, property, and contractual rights, to cause a great diminution in value of Pompey Coal's property, and to cause Pompey Coal to suffer a loss in income and a loss of time and money in protecting its rights.

### COUNT V
### CIVIL CONSPIRACY

87.    Paragraphs 1 through 86 of the Complaint are incorporated herein by reference.

88.    At all relevant times herein, Crinella, Mellado and Galati, through their authority as Jessup Borough officials, exercised influence and control over the other named Defendants.

89.    Upon information and belief, Defendants conspired, by agreement, to deprive, interfere, suppress, harass, threaten, intimidate, and potentially harm Pompey

Coal and their rights protected under the Fifth Amendment to the United States Constitution.

90.     The Defendants, in their individual capacities, furthered, or failed to prevent, the conspiracy to deprive, interfere, suppress, harass, threaten, intimidate, and harm Pompey Coal and its constitutionally-protected rights.

91.     Defendants, through their conspiracy, took overt acts in a common purpose to interfere with and injure Pompey Coal's constitutional, property, and contractual rights, to cause a great diminution in value of Pompey Coal's property, and to cause Pompey Coal to suffer a loss in income and money in protecting its rights.

## COUNT VI
## INTENTIONAL INTERFERENCE WITH EXISTING
## CONTRACTUAL RELATIONS

92.     Paragraphs 1 through 91 of the Complaint are incorporated herein by reference.

93.     At all relevant times herein, Crinella, Mellado and Galati through their authority as Jessup Borough officials, exercised influence and control over the other named Defendants.

94.     Defendants repeatedly suppressed and willfully and intentionally interfered with Pompey Coal's ability to protest any proposed change in the zoning classification within which its Property lies, because the Defendants failed to advertise or conduct a public hearing pursuant to Pennsylvania law.  The Defendants' actions in implementing the zoning ordinance were arbitrary and capricious.

95.    As a direct and proximate result of the Defendants' passage of Zoning Ordinance No. 3, the Defendants interfered with Pompey Coal's agreement with Northpoint for the sale of its Property in the amount of $3,500,000.

96.    Pompey Coal has suffered a significant pecuniary loss due to the Defendants' actions and such actions were knowing, willful and intentional and demonstrate reckless conduct.

## COUNT VII
### INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS

97.    Paragraphs 1 through 96 of the Complaint are incorporated herein by reference.

98.    At all relevant times herein, Crinella, Mellado and Galati through their authority as Jessup Borough officials, exercised influence and control over the other named Defendants.

99.    Defendants repeatedly suppressed and willfully and intentionally interfered with Pompey Coal's ability to protest any proposed change in the zoning classification within which its Property lies, because the Defendants failed to advertise or conduct a public hearing pursuant to Pennsylvania law.  The Defendants' actions in implementing the zoning ordinance were arbitrary and capricious.

## COUNT VIII
### VIOLATIONS OF THE PENNSYLVANIA MUNICIPALITIES PLANNING CODE AND JESSUP BOROUGH'S SUBDIVISION AND LAND USE ORDINANCE

100.    Paragraphs 1 through 99 of the Complaint are incorporated herein by reference.

101.    At all relevant times herein, the Defendants violated the Pennsylvania Municipalities Planning Code's, 53 P.S. §§ 10609 and 10107 and Jessup Borough Code's, 8 Pa.C.S. § 3301.2, notice requirements for the Borough's scheduled March 25, 2019 hearing date and April 10, 2019 adoption of ordinance date.

102.    At all relevant times herein, the Defendants violated the Jessup Borough's Subdivision and Land Use Ordinance in arbitrarily and capriciously rejecting Pompey Coal's land development plan without proper authority in contravention of the Borough Planning Commission's own vote of approval.

103.    Defendants repeatedly suppressed and willfully and intentionally interfered with Pompey Coal's ability to protest any proposed change in the zoning classification within which its Property lies, because the Defendants failed to advertise or conduct a public hearing pursuant to Pennsylvania and municipal law and by permitting the Borough Secretary to reject Pompey Coal's land development plan.  The Defendants' actions in implementing the zoning ordinance and rejection of the land development plan were arbitrary and capricious.

## PRAYER FOR RELIEF

WHEREFORE, Pompey Coal Company respectfully requests the following relief from this Honorable Court:

a.  A Declaratory Judgment that the Borough's Zoning Ordinance No. 3 is null and void;

b.  Compensatory damages;

c.  Punitive damages;

d.  Reasonable attorneys' fees, costs, and interest; and

e.   Such other relief as this Court may deem just and proper.

## **DEMAND FOR JURY**

Pompey Coal Company hereby demands a trial by jury.

RIDLEY, CHUFF, KOSIEROWSKI & SCANLON, P.C.

James J. Scanlon, Esq.
Attorney I.D. No.: 79557
400 Broad Street
Milford, PA  18337
570-296-5553

Attorney for Pompey Coal Company

## **VERIFICATION**

I, William Rinaldi, hereby state that I am the President of Pompey Coal Company; that I have reviewed the Complaint; that the information contained therein is true and correct to the best of my knowledge, information and belief. I understand that the statements contained herein are made subject to the penalties of 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorities.


_____
William Rinaldi

EXHIBIT "A"

*Borough of Jessup Comprehensive Plan and Zoning Ordinance Agreement*

Prepared 7/31/2018

## CONTRACT BETWEEN JESSUP BOROUGH AND URDC TO PREPARE A COMPREHENSIVE PLAN AND NEW ZONING ORDINANCE FOR JESSUP BOROUGH

### CONTRACT

THIS CONTRACT, entered into this *31* day of *July*_____, 2018, between Urban Research and Development Corporation, 28 West Broad Street, Bethlehem, Pennsylvania 18018 (hereinafter referred to as "URDC") and the Borough of Jessup, Lackawanna County, Pennsylvania (hereinafter referred to as "the Borough").

WHEREAS, the Borough issued a Request for Proposals through a competitive process, and determined that a Proposal submitted by URDC best served the interests of the Borough and was accepted by Borough Council;

WHEREAS, URDC agrees to provide the comprehensive plan and zoning ordinance revision services to the Borough for the price of Forty-Eight Thousand ($48,000) dollars, in accordance with the attached Scope of Services, which is labeled "Attachment A"; and

NOW, THEREFORE, the aforementioned services and products shall be supplied and delivered to the Borough by URDC in accordance with the Scope of Services, with payment to be made by the Borough to URDC in accordance with this Contract. The parties do further agree as follows:

ARTICLE 1. URDC agrees at its expense to furnish all labor, materials, equipment and facilities necessary to perform all obligations imposed by this Contract.

ARTICLE 2. URDC shall receive and accept payment for Contract performance in accordance with the fees stipulated in this Agreement.

ARTICLE 3. Payment to URDC shall be made upon delivery and acceptance of the Services by the Borough, based upon the percentage of each task that has been completed, which shall be specified in each invoice.

ARTICLE 4. It is agreed that the work in every respect, from the execution of this Contract, during the progress of the work, and until acceptance, shall be under the sole care of URDC. URDC shall solely be responsible for all methods and results, for use of equipment and personnel, for the safety of his/her employees and other persons, for the protection of public and private property, and for compliance with all local, state, and federal laws and regulations in performance of work under this Contract.

ARTICLE 5. URDC represents and warrants to the Borough that URDC is solvent financially and is experienced in and is competent to perform the work provided.

ARTICLE 6. URDC shall comply with all applicable federal, state and local laws and regulations.

ARTICLE 7. If any one provision of this Contract should be declared contrary to law, then such provision shall be deemed severable from the remainder of the Contract, and shall in no way affect the validity of any other provisions of this Contract.

ARTICLE 8. URDC shall provide services beginning upon receipt of a signed agreement, and continue, unless the Contract is terminated by the Borough in writing for good cause, until the work is successfully completed, as further specified within this Agreement.

ARTICLE 9. Work products of this project shall be considered to be the property of the Borough, and shall be able to be used, reused and reprinted by the Borough, after payment is made for a task.

*Borough of Jessup Comprehensive Plan and Zoning Ordinance Agreement*

This Contract constitutes the entire agreement between the parties hereto, and its provisions shall not be changed except in writing agreeable to both parties. The parties to this Contract intend to be legally bound thereby.

IN TESTIMONY WHEREOF, said parties have hereunto set their hands and seals the day and year above written.

ATTEST:                                 URBAN RESEARCH
                                        AND DEVELOPMENT CORPORATION

_____         By_____

ATTEST:                                 JESSUP BOROUGH

*Sharon Marek*                          By *Gerald J Crinella*

2

*Borough of Jessup Comprehensive Plan and Zoning Ordinance Agreement*

This Contract constitutes the entire agreement between the parties hereto, and its provisions shall not be changed except in writing agreeable to both parties. The parties to this Contract intend to be legally bound thereby.

IN TESTIMONY WHEREOF, said parties have hereunto set their hands and seals the day and year above written.

ATTEST:

URBAN RESEARCH
AND DEVELOPMENT CORPORATION

By _____

ATTEST:

JESSUP BOROUGH

By _____

*Borough of Jessup Comprehensive Plan and Zoning Ordinance Agreement*

## ATTACHMENT A – SCOPE OF SERVICES

The new plan and ordinance will promote ways to enhance new, desired development in the Borough and minimize the impacts of less desirable development. For example, the plan may recommend road improvements that should be submitted to PennDOT for funding. The new Zoning Ordinance will provide up-to-date tools to implement the plan concepts.

The Plan and Zoning Ordinance will include provisions for logical transitions of land use near intensive uses and may target underused buildings and land for desirable new uses. URDC understands that one objective of Jessup is to promote new residential development near existing neighborhoods, while limiting new industrial uses to areas that are mainly south of the Casey Highway interchange.

The Plan and development regulations also need to take into account future reuses of areas with environmental contamination. In some cases, the best reuses are business uses that require large amounts of hard surfaces, which can help to contain the contamination over time, and avoid contaminates being carried by runoff.

**Public Involvement** – URDC will work to educate the public. URDC will avoid jargon and unnecessary detail at public meetings. Residents can provide more meaningful input when the proposals are clearly understood. URDC will prepare an easy-to-understand summary of the proposed plan and zoning ordinance that can be widely distributed by the Borough and posted on the Borough website. The Plan will help officials, residents and businesses understand how the various parts of the community are interrelated, how positive aspects can be preserved and enhanced, and how problems can be resolved or avoided.

**Organization** – Our organization for the Jessup project will be simple. Charlie Schmehl will be URDC's Project Manager. Mr. Schmehl will report directly to the Mayor, Borough Council, the Jessup Planning Commission, or a planning committee if the Borough decides to appoint one. Mr. Schmehl will attend all meetings and will prepare the Plan text and the text and map of the optional Zoning Ordinance (if chosen by the Borough). He will be assisted on site design, historic preservation, streetscape, urban design and landscaping issues by Drew Sonntag of URDC, Mr. Sonntag would also assist with public meetings, as needed. Computerized mapping and GIS work will be completed by Conni Jones of URDC.

**Examples of Issues to be Addressed** – One of the first steps in the process will be to ask Borough officials which issues deserve the most attention. The following are examples of some of the issues that we believe the Borough may wish to be addressed in the proposed planning and ordinances project:

- **Compatible Mixtures of Uses** – The Comprehensive Plan and optional Zoning Ordinance should strengthen older commercial areas and encourage the right mix of residential and light commercial uses. For example, a branch bank can make an excellent neighbor for adjacent homes, but a 24-hour gas station/convenience store can make a horrible neighbor in some situations. Any allowed mixed uses should be controlled for late night hours of operation. The heaviest and most intensive uses should only be allowed in limited locations that are not near homes.

- **Home-ownership** – The Borough should consider planning and zoning policies to promote home-ownership and to increase the stability of neighborhoods. For example, many cities and boroughs make it hard to convert a one-family home into two or more apartments. Many municipalities strictly regulate rooming houses, except for allowance in one district. Some zoning districts can be written to promote singles, side-by-side twin homes, and townhouses, which are more likely to be owner-occupied than having one unit above another housing unit. At the same time, provisions in the zoning ordinance need to recognize market realities and the varied housing needs of residents.

3

*Borough of Jessup Comprehensive Plan and Zoning Ordinance Agreement*

- **Water Quality Protection** - Many of the areas that are currently zoned industrial in Jessup drain towards water supply reservoirs. URDC understands that some of these reservoirs are currently only used for backup or emergency purposes, but they may be needed in the future for daily use. Great care must be exercised in controlling the types of industrial development and in features to contain any spills within the site, to minimize hazards to water quality.

- **Economic Development** – Plan recommendations and zoning provisions, and procedures should be crafted to streamline the process to start and expand desirable types of businesses in business areas. For example, some setbacks can be decreased from streets and between businesses, and maximum coverages can be increased in some districts.

- **Traditional Neighborhood Development (TND)** – The proposed Comprehensive Plan and Zoning Ordinance have many provisions that help new development match the character and context of older areas. Such "form-based" elements can be designed to require that new buildings be placed relatively close to the street, with the area between the building and the street primarily occupied by landscaping. Most new parking can be placed to the rear or side of buildings. Provisions can avoid new townhouses that have most of the front facades and front yards consumed by driveways and garage doors.

  For select older business areas, it may be desirable to use the plan to promote a mix of commercial and residential uses in a coordinated manner. Coordinated development could make it easier for people to live closer to work. The downtown can be improved with new buildings close to the road, decorative street lights, low-cost facade improvements and street trees to become a more attractive and inviting location.

- **Industrial** – The zoning provisions should allow reasonable flexibility to promote investment in industrial areas. At the same time, careful controls are needed to address any proposed trash transfer stations, hazardous chemical plants, asphalt plants and similar industries. Proper noise, odor and lighting standards are needed to control nuisances.

## SCOPE OF WORK

URDC will prepare a Comprehensive Plan and Zoning Ordinance that meets all of the requirements of the PA Municipalities Planning Code (MPC). The key to developing a strategic, implementable plan is to work with Borough officials to identify and focus on the most important issues for the Borough. URDC will use information gained from public participation programs and input from the Borough staff and other officials to focus the plan on the issues most important to the Borough.

URDC suggests that the Borough appoint a Steering Committee composed of both officials and staff to assist with the project. The Steering Committee could include the members of Borough Council and the Planning Commission who are most interested in the topics, as well as knowledgeable citizens.

### Task 1. Citizen Participation & Meetings

URDC proposes the following set of Steering Committee workshop meetings and public meetings to:

- Create and maintain an effective working relationship among the Steering Committee, Borough officials, staff, and interested citizens;
- Encourage community input into the planning process; and
- Ensure timely, efficient completion of the project.

URDC will provide materials by email for meetings at least one week in advance. URDC will provide materials in .pdf format for the Borough to post on the Borough website. Website posting will allow most citizens to stay informed if they cannot attend meetings. There also should be a

*Borough of Jessup Comprehensive Plan and Zoning Ordinance Agreement*

place on the website to describe the importance of the Comprehensive Plan (and, if desired, the Zoning Ordinance) and to allow people to ask questions and submit comments. URDC will be available to assist the Borough staff in answering questions as needed.

## A. Online Citizen Survey

URDC will:
1. recommend questions for an internet-based survey (using websites such as SurveyMonkey.com),
2. set the survey up online, and
3. provide the results to the Borough in a report.

Paper copies of the survey can also be available through the Borough for persons without internet access.

Questionaires can also be distributed at public meetings to provide persons with an opportunity to comment if they do not wish to speak publicly.

## B. Monthly Workshop Meetings

URDC proposes monthly workshop meetings of the Steering Committee. It may also be useful to also have the Borough Engineer and the Borough Solicitor participate in some of the meetings.

Having varied interests represented during the workshop meetings is advisable and will help to reduce the need for separate meetings with other groups, which might otherwise result in repetitive discussions or conflicting conclusions. In any case, URDC will work within whatever committee arrangement the Borough deems appropriate.

## C. Interviews with Key Persons

As described further below, URDC will interview five key persons at the outset of the program to gain insights into important existing conditions and issues, such as the Fire Chief, the Police Chief, the Public Works Director, the Borough Engineer and a County Planning Commission staff-person.

## D. Initial Public Meetings

If desired, URDC will hold an initial public meeting to discuss public concerns and ideas.

A second, major public meeting should be held to discuss the community's vision, goals, and major alternatives. The second meeting should be held after the Steering Committee has had substantive discussion of issues and alternatives, but before any decisions have been made.

URDC will prepare a summary of the Plan, on paper and electronically, in .pdf format, which can be widely distributed at meetings, on the website, and at the Borough building. If desired, URDC will hold a briefing with the Mayor and Borough Council members who are not on the Steering Committee to make sure the Borough is comfortable with all of the recommendations before the Plan goes to official public meetings.

## E. Public Meetings/Hearing

URDC will lead a public meeting on the plan sponsored by the Borough Planning Committee. The meeting should be held before all of the decisions have been finalized.

After revisions resulting from the Borough Planning Commission meeting are incorporated into the draft plan, a public hearing will be held sponsored by the Borough Council. URDC will lead PowerPoint presentations. URDC will also prepare maps and other graphics to ensure that presentations are lively and informative.

## Task 2. Background Analysis and Mapping

### A. Kick-off Meeting

The Steering Committee will conduct a "kick-off" workshop meeting at the outset of the project to:

1) Refine the process to be used in completing the Plan, including preparation of a project completion schedule.
2) Identify major issues and opportunities committee members wish to see emphasized.
3) Ask committee members what visions they have for the future of the Borough.
4) Summarize the Borough's existing comprehensive plan, zoning and subdivision policies.

### B. Key Person Interviews

URDC will conduct interviews with five key persons who are knowledgeable about Jessup. Conclusions of the interview process will be reported in a memo.

### C. Digital Mapping

The Plan will utilize available digital (computerized) base map information and create new layers of information. The computerized base mapping will include existing roads, municipal borders, major road names, and creeks. Property lines will also be included on selected maps. GIS planning maps will be produced at various scales during the planning program to use in workshop meetings, public meetings and the final comprehensive plan document. Maps will be produced using ArcGIS, which is the standard program for planning maps.

The latest available information from the County, the Borough, Federal Emergency Management Agency (FEMA), Pennsylvania Spatial Data Access (PASDA), U.S. Natural Resources Conservation Service (NRCS), and other entities as well as URDC's field work will be used to create the maps.

### D. Existing Conditions and Trends Reports and Mapping

The background reports and maps will include analysis of existing conditions most likely to influence the future conservation and development of Jessup Borough. The background reports will include both factual information and analysis of strategic concerns, assets and opportunities. URDC will prepare a concise, user-friendly written report highlighting important conditions and trends in each of the following areas:

1. Existing Plans – URDC will prepare a summary and critique of the existing Comprehensive Plan in a form that will allow Borough officials to provide input on whether various policies should continue to be considered in the new Plan.

2. Regional Policies and Trends, and Past Plans – The factors within the larger region and in the surrounding communities that most affect the Borough will be identified, including growth rates in Lackawanna County and the communities surrounding Jessup. URDC will summarize plans developed by the County, the County of Lackawanna Transit System (COLTS), any Sewage Facilities Plan, and other relevant plans.

3. Population, Housing and Economics Data – Significant population and housing trends will be analyzed, including the following information:

- total population,
- population changes from 1990 to the present,
- population projections to 2030,
- age breakdown,

- household sizes, housing types,
- owner vs. renter occupied,
- age, and
- median value.

6

Total population change will be compared to adjacent municipalities. Proposed developments now under municipal review and developments approved but not yet completed will be inventoried and mapped. Economic data will include per capita, median household and median family incomes as well as poverty level information.

4. Existing Land Uses – URDC will map and describe existing land uses on a lot line base map. A recent large aerial photo will also be provided to illustrate development patterns.

5. Existing Zoning – The existing zoning policies will be mapped and summarized.

6. Natural Features – URDC will map and describe natural features. URDC will emphasize sensitive natural features that should limit future development, such as:

- known wetlands,
- watersheds,
- 100-year floodplains,
- natural heritage areas, and
- concentrations of steep slopes.

7. Community Facilities and Services – Existing conditions and major issues will be described involving the following:

- public schools,
- the fire company,
- police protection,
- emergency medical services,
- parks,
- trails,
- wastewater services,
- water supply services, and
- public works.

8. Historic Buildings – URDC will map concentrations of historic buildings, as well as individually important buildings of state and national importance.

9. Transportation – URDC will compile relevant transportation information, including the following:

- Plans for new road or trail connections,
- Conclusions and recommendations of transportation studies,
- COLTS and paratransit services in the area, and
- A map and description of transportation problem locations, such as awkwardly aligned intersections, sharp curves and narrow bridges.

10. Adjacent Municipalities – The current zoning of all land adjacent to the boundaries of Jessup Borough will be identified and mapped.

### Task 3 – Plan Goals and Objectives

### A. Summary of Major Assets and Constraints

Based on the conclusions of the background analysis, the Citizen Survey and the initial meetings, URDC will describe the most critical issues facing Jessup. Development pressures in the Borough will be highlighted. The analysis will also address key areas of that have opportunities for redevelopment, as well as areas where preservation is vitally important.

### B. Vision, Goals and Objectives

After the major assets and constraints are identified, URDC will work with Borough officials to prepare a Vision Statement for the plan, as well as goals and objectives under each goal. The goals and objectives provide the overall direction for the plan's policies and recommendations.

### Task 4 – The Comprehensive Plan Recommendations

Specific recommendations will be developed to achieve the community objectives. The Comprehensive Plan will serve as a "Handbook" for elected officials, appointed officials, Borough staff, landowners, developers and residents to use in making decisions about the future of the community. The comprehensive plan will feature user-friendly, easy-to-read text and will include all maps, illustrations, charts and other graphics needed to depict the various comprehensive plan elements. The Plan can be organized around several priority issues that will be identified by the public and the Steering Committee.

Under the Steering Committee's policy direction, URDC will prepare the draft Plan to emphasize the most strategic issues in Jessup. URDC will work to coordinate Jessup's policies and plans with those of PennDOT, the County Planning Commission, adjacent municipalities, and other entities.

The Plan will emphasize:

- An assessment of major issues based upon facts and trends,
- A Vision Statement and Goals that reflect public input,
- Policies that are sufficiently specific to be tied to definite actions,
- Recommended actions with time-lines, identification of responsible parties, and, if needed, suggestions for financing sources,
- Recommendations on monitoring Plan implementation,
- An organization and presentation that is understandable for a wide range of readers, and
- Compliance with the Municipalities Planning Code (MPC).

The following information describes chapters based upon the Pennsylvania MPC. As the Borough identifies the most critical concerns, URDC will adjust the chapters to highlight the critical concerns.

### A. Future Land Use and Housing

The Future Land Use and Housing element will describe how to accommodate a desirable level of growth in the future based on the principles of natural resource conservation and agricultural preservation. The Future Land Use and Housing element will recommend appropriate future land uses and densities for all areas, including areas proposed for commercial, industrial, residential, institutional, public and open space use.

Major land use issues in the Borough that will be addressed in the Comprehensive Plan include:

- The need to promote additional investment in downtown Jessup.
- Compatibility with the new Lackawanna Energy Center (Invenergy) natural gas-fueled power plant.
- The proper locations for various types of new businesses, with an emphasis on directing new industrial uses to locations that are not near neighborhoods and that will not require heavy truck traffic to pass on residential streets.
- Some areas of housing that are in need of rehabilitation.

URDC will propose a Future Land Use Plan with recommendations pertaining to various types of development and redevelopment. The Future Land Use Plan will recommend methods to mitigate negative impacts of potentially incompatible land uses. The Future Land Use Plan will form the basis for recommended changes to the Borough's Zoning and Subdivision and Land Development Ordinances.

The proposed housing policy will address a variety of housing types, affordability issues and densities. The housing element should address the needs of various types of households, including housing for older persons, for younger families, and for persons who need assisted living or personal care arrangements. The Plan will also suggest a proper distribution of commercial areas.

8

Commercial areas should be located and sized to provide for the everyday shopping needs of residents and employees.

## B. Community Character and Urban Design

The Plan will establish policies that the Borough could use to develop design standards and guidelines. Topics would include:

- Community gateways – entrances to the Borough, which are important for creating a first impression of Jessup, and
- Development along major roads.

The Plan text will discuss landscaping improvements and actions that can improve or maintain the appearance of major gateway entrances and the most visible corridors in Jessup. The intent is to allow for sufficient flexibility to promote desirable types of development and redevelopment while also protecting the Borough's character and the livability of nearby residential areas.

## C. Natural Feature and Open Space Conservation

A variety of alternative approaches will be discussed regarding land conservation. Recommendations will encompass both voluntary and regulatory approaches.

URDC will make recommendations on strengthening environmental protection regulations in the zoning and subdivision and land development ordinances. URDC will also consider possible ways to enhance and protect the Lackawanna River corridor in the Borough, as well as the reservoirs in the vicinity.

The Plan will also recommend ways that stormwater infiltration, pervious paving and more natural forms of stormwater management can aid in meeting the Borough's obligations under the federal Municipal Separate Storm Sewer System (MS4) program.

## D. Transportation / Transit

Traditionally, traffic engineering has emphasized moving high volumes of traffic as fast as possible, to the detriment of other factors, such as pedestrian and bicycle safety, the livability of homes, and the character of the community. Roadway improvements must be in balance with other community objectives.

URDC will analyze available traffic counts and traffic studies. The Transportation element will recommend refinements to improve traffic flow, reduce congestion and enhance safety. Suggestions will also be made on possible new road connections and improvements that should be sought from developers as lands are proposed for future development. URDC will also discuss methods of planning for better access onto major roads.

URDC will prepare a recommended Transportation Plan Element and Map, including recommended locations for intersection improvements. Major recommendations of any recent traffic studies will be reviewed and incorporated, as appropriate. Information in the Transportation element could be used as the basis for further study and cost estimates by a professional traffic engineer so that funding for needed improvements can be sought through the PennDOT Transportation Improvement Program. Also, additional new road connections or intersection realignments may be recommended for addition on an Official Map, which would be adopted by the Borough so that land can be reserved for the recommended improvements.

Transit amenities should be considered along COLTS routes. Such amenities include shelters, crosswalks and sidewalks for bus passengers within certain areas.

The Plan will also include a discussion of improvements to serve pedestrians and bicyclists and to improve safety, including both on-road improvements (such as well-marked wider smooth shoulders) and off-road trails.

### E.   Economic Development

URDC will identify underutilized commercial and industrial spaces and lands and other business opportunities. URDC will also address ways to promote additional investment in or redevelopment of industrial and commercial sites. Potential methods could include tax abatement or Tax Increment Financing in targeted areas to promote redevelopment where needed.

### F.   Central Water and Sewer Services

URDC will make recommendations for the extension of central water and public sewer services in coordination with the Land Use Plan.

### G.   Parks, Recreation and Open Space

URDC will make recommendations regarding areas that should be provided for future public recreation needs. Opportunities to create greenway and trail links to existing and/or proposed regional trails will be highlighted. The section will build upon the findings and recommendations of the *Open Space, Greenways & Outdoor Recreation Master Plan* for Lackawanna and Luzerne Counties and previous plans for trails and conservation along the Lackawanna River.

### H.   Other Community Facilities and Services

Current police, fire and emergency medical services will be described. Key issues will be presented, based on input from the Jessup Police Department, the Jessup Company No. 1, and the Jessup Hose Company No. 2 and Ambulance Association. URDC will present suggestions to avoid a shortage of volunteer firefighters during weekday mornings and afternoons, such as providing incentives for Borough employees to serve as firefighters. Also, a new State law allows municipalities to offer tax incentives to volunteer firefighters.

The Plan will present information about existing Mid Valley School District buildings, including capacities and enrollment projections, as well as proposed building projects. URDC will also describe opportunities for additional cooperative efforts with Mid Valley, such as recreation programs, trail links or environmental education programs.

### Task 4 – Action Plan

The Action Plan will focus on implementing the Comprehensive Plan's goals and recommendations. The Action Plan will:

- Summarize the Plan's recommendations and place each recommendation into one of three implementation phases: short-range, intermediate and long-range.
- Describe alternative techniques and potential funding sources to carry out plan recommendations, including available intergovernmental grants and loans.
- Indicate the person/agency that should have primary responsibility to carry out each recommendation.
- Describe appropriate methods the Borough should consider to increase cooperation with nearby municipalities and with Lackawanna County.

### Task 5 – Plan Products

### A.   Meeting Handouts / Materials

URDC will prepare and email handouts/materials prior to monthly plan committee meetings. Advance information will allow the committee to review materials before the meetings. URDC will also pass out paper copies at committee meetings, so that the members do not necessarily have to print out their own copies.

**B.   Draft Comprehensive Plan Report**

URDC will provide 12 copies of all memos, maps, and handouts to the Borough.

URDC will also provide 15 bound, paper copies of the initial and revised draft plans. In addition, a PDF copy will be provided of all materials and drafts that can be distributed to other interested persons and can be posted on the Borough website.

**C.   Final Comprehensive Plan Report**

Most people will want to view the Plan online. URDC will provide a total of 25 bound copies of the final comprehensive plan report to the Borough. In addition, URDC will provide the final plan report in PDF format for posting on the Borough website. URDC will also provide the adopted Plan in MSWord format, to allow for future changes. URDC will also provide one unbound paper copy of the final plan that can be used to make additional copies. Almost all maps in the report will be 11 by 17 full-color fold-out maps. All mapping will be provided in both .pdf and ArcGIS formats. URDC will also provide 4 copies of the Plan on CD.

URDC will also provide an easy-to-understand summary of the Comprehensive Plan. The summary will be suitable for posting on the Borough website and will include the land use plan map.

**Task 6. – Field Work, Photography, Analysis of Previous Plans and Preparation of a Discussion Guide**

URDC will complete an analysis of the Borough in the field, including taking photographs that can be used in presentations. URDC will use the existing land uses mapping from the Comprehensive Plan and provide aerial photos for discussions.

URDC will analyze previous Borough planning documents and efforts, the current relevant ordinances of the Borough (including zoning and SALDO), previous reports and plans, the County Comprehensive Plan, and other reports of the County Planning Commission. Our goal is to take full advantage of and build on previous planning efforts.

Before any effort is made to write zoning text, the Borough should develop a consensus about the major policies for the ordinance. Therefore, URDC will also prepare a Discussion Guide that can be used at the first workshop meeting. The Discussion Guide summarizes policies in the Comprehensive Plan, explains current zoning standards, and offers alternatives for discussion. The Discussion Guide will also identify innovative methods that can be used to achieve local objectives.

**Task 7. – Zoning Workshop Meetings**

The Steering Committee work on the zoning will start with a Discussion Guide. Based upon the Discussion Guide conversations, URDC will prepare an Annotated Outline of the Zoning Ordinance. The outline will propose an overall organization for the Ordinance and discuss major policies that will be followed in various sections. The outline will build upon the Comprehensive Plan policies. The Outline will be provided to the staff for an initial review and then discussed with the Steering Committee after any revisions.

**Task 8. – Providing Material for the Borough Website**

All of the draft text and maps regarding the Zoning Ordinance will be made available to the Borough as .PDF files, which will allow the Borough to post the material on the Borough website for public

review. URDC also will provide text that the Borough can post on its website to explain the reasons for the project. An email link should be provided so that the public can easily submit comments and questions to the Borough which URDC can help answer, as needed.

## Task 9. — Initial Public Meeting and Public Involvement Program

URDC will work closely with Jessup officials to offer opportunities for meaningful public input from the very beginning of the process in order to help develop consensus. URDC wish to involve property owners, residents and business owners because they have investments to protect and because their input will ultimately result in a better zoning ordinance. Residents know Jessup and the local market better than we do.

We find that the most useful public involvement is provided in the middle of the process—after the Borough officials have discussed issues and alternatives, but before any final decisions have been made. The timing allows the public to discuss concrete ideas, as opposed to having early meetings that are consumed by very generalized comments.

URDC will make a presentation at each public meeting/hearing to:

- Explain the Borough's vision for the new zoning ordinance.
- Highlight the purposes of the proposed ordinance.
- Summarize the contents of the proposed ordinance.
- Outline the steps required to adopt the ordinance and identify further opportunities for public comment.

For each public session, URDC will use large poster-size maps and a Powerpoint presentation with graphics and photos to ensure our presentations are lively and informative. URDC will moderate a public question and answer period following each presentation. Prior to each meeting, URDC will provide appropriate information for the Borough to post on its website.

URDC will discuss with the Borough the desirability of using a variety of additional citizen participation techniques, including methods URDC has used in similar planning programs. The methods could include:

- Using an online survey;
- Breaking a large meeting into smaller discussion groups, with the groups, then reporting back to the whole group at the end;
- Using focus groups to discuss the biggest outstanding questions;
- Holding an open house so the public can view maps and ask site-specific questions prior to the official start of the meeting;
- Using written questionnaires at public meetings, in order to supplement verbal comments;
- Encouraging persons to join an email list to receive information about the ordinance; and
- Using photos of various types and forms of development at public meetings and asking attendees to rank preferences.

## Task 10. — Preparation of Draft Zoning Ordinance

URDC recommends starting with the most policy-oriented sections, which involve the Zoning Map and the purposes, uses and densities of the various zoning districts. Then, URDC will provide dimensional provisions, followed by the remainder of the ordinance. URDC will use tables to clearly display many provisions, such as allowed uses in various districts and the dimensional requirements.

URDC's proposed regulations will incorporate incentives and disincentives intended to steer land owners toward desirable types of development. URDC will also make extensive use of illustrations, photos and sketches to help ensure proposed regulations are easily understood by officials, local land owners and the general public.

*Borough of Jessup Comprehensive Plan and Zoning Ordinance Agreement*

In addition to the issues described in our Comprehensive Plan proposal, the revisions are intended to address the following types of issues:

Traditional Neighborhood Development – The draft will recommend compatible types of mixed uses where appropriate. URDC will recommend inclusion of some form-based elements, such as requiring that new buildings in key areas be placed close to the street, with most of the parking located to the side or rear of buildings.

Streamlining Provisions to Promote Investment in Housing – Some provisions can be reduced, in order to facilitate building or expanding new housing. Zoning should also make it relatively easy to add a rear deck or front porch to a home. A 35-foot height requirement could be increased to 40 feet to promote more attractive architectural designs. Density bonuses could be offered for age-restricted housing.

Streamlining Provisions to Promote New Small Businesses – A desirable type of business proposed in an appropriate area should be approved quickly, without needing special exception approval or variances. Small setbacks should be allowed between businesses. Setbacks from streets should be reduced.

Flood Hazards – Hazards from flooding need to be carefully considered. The frequency and severity of storms have increased. Across the country, the increase in federal insurance premiums is also having severe effects on homebuyers and businesses.

Rooming Houses – To promote homeownership, the Borough may wish to become more restrictive in allowing rooming houses.

Adult Uses – The Borough's standards for adult uses (such as strip clubs) should be updated based upon recent federal court decisions. Adult uses are typically limited to one industrial district.

Green Incentives – Incentives can also be offered for sustainable practices. URDC has written several zoning and other ordinances that provide incentives for green roofs, for LEED certification and even for electric vehicle recharging stations.

Signs – Signs have a great impact upon attractiveness. Large billboards can harm the livability and attractiveness of adjacent neighborhoods. Electronically changing signs need proper controls regarding the frequency of change, the brightness and to prohibit moving images. In most cases, new signs are more attractive than older signs. However, in similar areas, URDC has found that businesses are hesitant to replace ugly old signs because the zoning regulations would require that the new signs would have to be much smaller. A provision can be added to make it easier to replace old signs with new signs of similar size.

Landscaping and Buffering – Landscaped screening is valuable between major business uses in commercial districts and adjacent homes. In dense areas, the buffer could be relatively narrow to avoid inhibiting new development. URDC will recommend landscaping provisions and other provisions to improve the streetscape, to beautify the area, to promote walkability and to promote transit use.

Parking – Reasonable flexibility will be proposed in parking regulations, such as reductions in parking where there is sufficient on-street or municipal parking, reductions for shared parking, and allowance of off-site parking.

Food Carts – How should food carts and food trucks be treated? On one hand, food carts and trucks provide an opportunity for individuals to start a new business with a limited investment. On the other hand, carts and trucks may divert business from restaurants with a year-round presence that pay property taxes.

*Borough of Jessup Comprehensive Plan and Zoning Ordinance Agreement*

### Task 11. – New Zoning Map

URDC will prepare a full color zoning map, which will include major street names and lot lines (assuming the names and lot lines are available in digital form). URDC will recommend zoning boundaries to carry out the new zoning policies. The highly readable map can be posted online in a .pdf format that allows persons to zoom in to various areas to see details at a larger scale.

### Task 12. – Meetings to Review Zoning Recommendations

URDC will continue to meet with the Steering Committee and/or Borough staff to review and refine the draft zoning ordinance. URDC will provide additional drafts as needed to address the comments received. The Steering Committee will then be asked to forward the draft to the Borough Planning Commission.

### Task 13. – Public Meetings and Summary of Draft Ordinance

URDC will prepare a concise and easy-to-understand memo that summarizes the draft zoning ordinance. The Borough can distribute the memo to the media and the public prior to the public meetings. The memo should also be posted on the Borough's website.

URDC will provide draft legal ads to the Borough Solicitor for his/her approval.  URDC will participate at a Public Meeting by the Borough Planning Commission. At the meeting, URDC will explain the purposes of the draft ordinance and summarize the major recommendations.

URDC will use large poster-size maps, a PowerPoint presentation, and other graphics, as needed, to ensure that our presentations are lively and informative. URDC will moderate a public question/answer period following our presentation.

The draft ordinance should be sent to the County Planning Commission for an initial review. It is desirable to have two County reviews because court decisions have ruled that the County Planning Commission must see the exact final wording prior to adoption. A two-step review process will make it easier to address County comments without unnecessarily delaying the adoption.

### Task 14. – Workshop Meeting with the Mayor and Borough Council

If desired, URDC could hold an informal workshop with the Mayor and Borough Council in order to address any concerns of Borough officials before the final public hearing. The workshop will also make aid Council members in answering questions from the public outside of meetings.

### Task 15. – Borough Council Public Hearing and Enactment

Our goal is to address as many questions and concerns as possible before the final Borough Council Public Hearing is scheduled. URDC will make a presentation at the hearing and answer questions.

After any final revisions are requested by the Borough, the draft ordinance will need to be sent to the County for a second review. The ordinance will then be ready for adoption.

## Zoning Interim and Final Products

URDC will submit the following final and interim products to Jessup:

1.  12 copies of Discussion Guide and memos.

2.  12 copies each of an initial, second and final draft of the Zoning Ordinance text.

3.  A large presentation copy and 12 11x17 color copies of the initial, second and final drafts of the Zoning Map.

4. A PDF version of the draft ordinance and a summary memo that can be posted on the Borough website for public review.

5. 12 bound copies of the adopted Zoning Ordinance and Map. The Zoning Ordinance will use a numbering system as directed to be compatible with the Borough's existing codification system.

6. 3 large copies of the adopted Zoning Map (approximately 48" x 48"), 2 copies of which will be mounted on rigid boards.

7. A paper copy of the adopted zoning text and map that is ready for reproduction.

8. After adoption, five digital copies of the Zoning Ordinance (including Word and .pdf versions) on CDs. The CDs will allow the Borough to make additional copies, as desired, and to make revisions to the Word version in the future.

9. ArcGIS files Zoning Map will also be provided on a CD.

## Project Completion Schedule

We propose that the work on the zoning ordinance overlap with the Comprehensive Plan. Once there is consensus on the main comprehensive plan policies, then work could start on the zoning districts and the zoning map.

There also is an option for URDC to complete a High Priority Zoning Amendment. This type of amendment can be completed near the start of the process, and would address a few immediate concerns.

The following work will be completed and materials will be submitted within the following months, after the receipt of a signed contract from the Borough:

| | |
|---|---|
| Review and Analysis of Existing Reports, Field Work, Photography, Key Person Interviews | Month 1 |
| Background Information and Mapping, and Initial Workshop Meetings | Months 2 & 3 |
| Preparation of Goals and Objectives, and Discussion of Alternatives, and Workshop Meeting | Month 4 |
| Develop Draft of Land Use Plan and Map, and Workshop Meetings | Months 5 and 6 |
| Major Public Meeting to Discuss Issues and Alternative Recommendations | Month 6 |
| Prepare Other Chapters of Comprehensive Plan and Workshop Meeting | Month 7 |
| Update Plan chapters and Prepare Action Plan, and and Workshop Meeting | Month 8 |
| Public Meeting by the Borough Planning Commission and County Review. Provide the draft Zoning Map and Zoning Districts Text | Month 9 |
| Prepare Updated Draft of Plan, in response to public and official comments and County Review, and Workshop Meeting. Revise the draft Zoning Map and Zoning Districts Text | Month 9 |

*Borough of Jessup Comprehensive Plan and Zoning Ordinance Agreement*

| | |
|---|---|
| Public Hearing by the Borough Council on the Plan. Workshop meeting on the Dimensional Requirements & Additional Requirements zoning sections. | Month 11 |
| Final Revisions to the Plan, and Borough Council Meeting to Consider Plan for Adoption. Workshop meeting on the Parking, Signs and General Regs. section of the Zoning Ordinance. | Month 12 |
| Final Version of the Plan that is Ready-to-Adopt | 3 weeks after receiving final comments from the Borough |
| Workshop to Review Remainder of Draft Ordinance (such as Definitions and Administration) | Month 13 |
| Workshop to Review Revised Draft of Ordinance, County Review | Month 14 |
| Planning Commission Public Meeting on Zoning Ordinance | Month 15 |
| Borough Council Public Hearing on Zoning Ordinance | Month 16 |
| Final Version of the Zoning Ordinance that is Ready-to-Adopt | 3 weeks after receiving final comments from the Borough |
| Digital and Reproducible Copies of the Plan and Ordinance | Within 3 days after adoption |

## Fees

URDC's total fee for completing the Comprehensive Plan and Zoning Ordinance Scope of Work is $ 48,000, including all consultant expenses.

| | Cost |
|---|---|
| Analysis and summary of related relevant previous plans and reports, and field work and digital photography around the Borough | $ 1,900 |
| Analysis of Existing Conditions and Trends, and Mapping of Existing Conditions | $ 8,300 |
| Key Stakeholder Interviews and Summary Report | $ 2,100 |
| Development of Vision Statement, Mission Statement and Goals and Objectives | $ 900 |
| Preparation of First Draft of Comprehensive Plan Recommendations | $ 8,500 |
| Preparation of Action Plan/Implementation Plan | $ 4,500 |
| Preparation of Second Draft of the Complete Report | $ 2,700 |
| Preparation of Final Draft of the Complete Report | $ 1,700 |
| Summary of Plan | $ 800 |
| Plan adoption process, and final Public Meeting/Hearings and public involvement | $ 2,100 |
| Plan Expenses, including Travel, Map Plotting and Photocopying | $ 2,600 |

*Borough of Jessup Comprehensive Plan and Zoning Ordinance Agreement*

| | |
|---|---|
| (includes $900 mileage and tolls, $1,200 photocopying, $500 plotting) | |
| Preparation of Zoning Map | $ 2,700 |
| Preparation of First Draft of Zoning Text | $ 3,400 |
| Preparation of Second Draft of Zoning Text | $ 2,100 |
| Preparation of Final Draft of Zoning Text | $ 900 |
| Zoning Expenses (including printing, plotting and mileage) | $ 800 |
| Preparation of a Summary of the draf Zoning Ordinance | $ 800 |
| Zoning ordinance adoption process, including Public Hearing and public involvement | $ 1,200 |
| **Total Not to Exceed Costs, including all consultant expenses** | $ 48,000 |

This project will not be invoiced based upon hourly rates, but instead will be invoiced based upon the percentage of each of the specified tasks and meetings that has been completed.

If the Borough would specifically authorize the completion of additional work, then the standard hourly rate for both Charlie Schmehl and Drew Sonntag, who are both principals of the firm, is $96 an hour. The hourly rate for URDC's GIS staff is $55, and the hourly rate for clerical staff is $38. Mileage is charged at 50 cents per mile, and tolls are charged at the actual cost.

EXHIBIT "B"

# LACKAWANNA COUNTY PLANNING COMMISSION
## ORDINANCE/AMENDMENT
### EVALUATION REPORT

| Office Use Only: | | |
|---|---|---|
| REC'D: 14-Aug-18 | REV'D: 27-Aug-18 | RET'D: 13-Sep-18 |

**Municipality:** Jessup Borough

**Ordinance:** Zoning (Map)

**Replacement/Amendment:** Amendment

**Date of Current Ordinance:** Mar-98

**Summary:** Re-zone the M-1A zone district west of the Casey Highway to R-2 and IAC; revise IAC building regulations

**Submitted by:** Christopher Szewczyk, Solicitor

## COMMENTS

The current comprehensive plan (1998) designates the land-use of the majority of the area as manufacturing. In light of the borough's recent undertaking of a comprehensive plan update, any changes to the zoning ordinance should take the findings of the new plan study into consideration. Re-zoning the area at this time may be premature and challengable in court.

Reviewer: _Mary J Ouritz_

EXHIBIT "C"



September 5, 2018

Christopher J. Szewczyk, Esquire
Mazzoni Karam Petorak & Valvano
Suite 201, Bank Towers
321 Spruce Street
Scranton, PA 18503

520 SPRUCE STREET

P.O. BOX 826

SCRANTON, PA  18501

RAYMOND C. RINALDI

CARL J. POVEROMO

RAYMOND C. RINALDI II

FRED P. RINALDI

TELEPHONE: 570-346-7441

FACSIMILE: 570-346-8170

INTERNET: www.LawInPA.com

E-MAIL: Mail@LawInPA.com

RE: Pompey Coal Company

Dear Chris:

This office represents Pompey Coal Company (Pompey).  My client has forwarded items from the Jessup Planning Commission meeting of August 22, 2018.  I am enclosing copies of:

1. DRAFT Zoning Map Change dated August 9, 2018, prepared by Urban Research & Development Corporation;
2. An Ordinance Amending Ordinance Number 3 of 1991, as Amended, entitled the "Jessup Borough Zoning Ordinance", Amending the Borough of Jessup Zoning Map and IAC Dimensional Requirements;
3. Jessup Borough Planning Commission Meeting Agenda of August 22, 2018;

The purpose of this letter, foremost, is to object to any zoning change to my client's property in Jessup.  My client's property is zoned M-1A.  In August of 2016, the Borough of Jessup approved a subdivision of my client's property.  I am enclosing a copy of the approved subdivision recorded in the Lackawanna County Recorder of Deeds to Map Book 6AM page 8868.  My client has been actively marketing the property, for future development in conformity with the M-1A designation.  The current zoning for my client's property (M-1A) has maintained this zoning for twenty (20) years.  Your client's actions to change the zoning to R-2 and IAC will impose a severe and substantial financial impact in developing this property.  The effect of this proposed zoning change will deprive my client the lawful use of its property, and amounts to a taking for which they must be justly compensated. The proposed ordinance, if adopted, will constitute impermissible "spot zoning".

Members of the public that attended the meeting reported to my client that public officials of the Borough indicated they discussed the potential for a

-   *Continued*

*September 5, 2018*
*Szewczyk*
*Page 2*

zoning change with my client.  My client has indicated that **no one** from Pompey Coal Company discussed any changes to zoning with any public officials from the Borough.  I find it curious that the public officials of the Borough would contemplate a zoning change that only affects two (2) property owners.  It is my understanding that Borough Council recently retained the services of Urban Research & Development Corporation to develop a comprehensive plan for the Borough.  This request to change the zone from M-1A to R-2 and IAC contravenes what certain members of Council and Planning have stated publicly regarding having the comprehensive plan completed prior to any zoning changes.  Instead, the Borough has directed the same consultant, who is developing a comprehensive plan, to draft a zoning map change with no input from affected landowners or any other members of the public.  How can this proposed ordinance follow the Borough's comprehensive plan which has yet to be adopted, let alone drafted for review?

This property has access to rail service, an updated power line system, close proximity to a major highway, all factors conducive to development for the uses allowed in the M-1A zone.  On December 22, 2017, the Tax Cuts and Jobs Act (TCJA) created Qualified Opportunity Zones. These Qualified Opportunity Zones are an economic development tool for promoting long-term investment, designed to spur economic development and job creation in distressed communities. In Lackawanna County, only Jessup, Scranton and Blakely have been approved as Qualified Opportunity Zones.  In order to further development, my client is in the process of installing a new sewer line from additional property it owns on the easterly side of the Casey Highway which will proceed under the highway to the Lackawanna River Basin Sewer Authority line.  The cost of this sewer line is a significant expense for my client and will benefit the future development of this property.

It is premature for your client to request this zoning change as my client continues to improve and develop the site consistent with the current zoning regulations.  This proposed course of action by the Borough will constitute a regulatory taking. U.S. Const. Amend. 5. Lone Star Industries, Inc. v. United States, 109 Fed. Cl. 746 (2013), and will unduly burden private property to the point of diminishing its utility or value. U.S.C.A. Const.Amend. 5. Americopters, LLC v. U.S., 95 Fed. Cl. 224 (2010).

-   *Continued*

*September 5, 2018*
*Szewczyk*
*Page 3*

If the Borough continues in this course of action, we have been authorized to litigate this matter. If the Borough proceeds with this process to change my client's current zoning designation, you leave us no alternative other than to pursue all legal proceedings to enforce my client's property rights. If a lawsuit is required, my client intends to seek recovery of all damages to which it may be entitled at law or inequity. We hope such action will not be necessary, and you will give this matter your immediate attention.

Please be guided accordingly.

Sincerely yours,

RINALDI & POVEROMO, P.C.

Raymond C. Rinaldi, II, Esquire

RCRII/ls
Enclosures
*VIA Email to: cjs@mkpvlaw.com and*
*U.S. Certified Mail #7016 0910 0001 5003 1402, Return Receipt Requested*

EXHIBIT "D"



Paul R. Mazzoni
Gerard M. Karam
John Petorak, Jr.
Rocco V. Valvano, Jr.
Christopher J. Szewczyk

## Mazzoni Karam Petorak & Valvano
ATTORNEYS AT LAW

August 30, 2018

Pompey Coal Co.
520 Spruce Street
Scranton, PA 18503

**RE:   Zoning Ordinance and Map Amendment Hearing**

To Whom It May Concern:

Please be advised that the Jessup Borough Council will hold a public hearing on October 1, 2018 at 7:00 P.M. at the Jessup Borough Building, 395 Lane Street, Jessup, PA regarding an "Ordinance Amending Ordinance Number 3 of 1991, As Amended, Entitled the 'Jessup Borough Zoning Ordinance', Amending the Borough of Jessup Zoning Map and IAC Dimensional Requirements." Council will vote on adoption of this amendment at a public meeting after the public hearing on October 1st. This proposed amendment affects property owned by you in that area.

Enclosed for your review is:

1. The proposed ordinance with accompanying map; and
2. The Legal Notice advertising the proposed amendment and hearing which will be published in the paper in the near future.

Thank you.

Very truly yours,

Christopher J. Szewczyk, Esquire

Enclosures

BOROUGH OF JESSUP
LACKAWANNA COUNTY, PENNSYLVANIA
ORDINANCE No. ____-2018

AN ORDINANCE AMENDING ORDINANCE NUMBER 3 OF 1991, AS AMENDED,
ENTITLED THE "JESSUP BOROUGH ZONING ORDINANCE", AMENDING THE
BOROUGH OF JESSUP ZONING MAP AND IAC DIMENSIONAL REQUIREMENTS

WHEREAS, the Borough of Jessup is a duly ordained and existing political subdivision organized under the laws of the Commonwealth of Pennsylvania, particularly, the Pennsylvania Borough Code; and

WHEREAS, the Borough of Jessup has in effect Ordinance Number 3 of the year of 1991, otherwise known as the "Jessup Borough Zoning Ordinance" as amended to date; and

WHEREAS, Jessup Borough Council has duly discussed, legally advertised and held public hearings in accordance with the Pennsylvania Municipalities Planning Code as well as said Ordinance of its intention to amend said Ordinance in accordance with the terms and conditions outlined herein.

NOW, THEREFORE, be it hereby ordained and enacted by the Jessup Borough Council pursuant to the authority granted to it under the laws of the Commonwealth of Pennsylvania, as follows:

1. **Zoning Map -** The Borough of Jessup Zoning Map is hereby revised as shown on Attachment A, dated August 9, 2018.

2. **IAC District Dimensional Requirements -** Section 3.235 of the Zoning Ordinance, regarding building regulations for the IAC district, is replaced with the following:

   "In the IAC district, residential uses shall comply with the requirements for the R-2 district in Schedule I-B, and non-residential uses shall comply with the requirements for the C-2 district in Schedule II-C."

3. **Severability –** The provisions of this Ordinance are severable. If any part of this Ordinance is declared to be unconstitutional, illegal, or invalid for whatever reason, the remaining provisions shall be unaffected and same shall remain in full force and effect. Only those provisions deemed invalid shall be stricken.

4. **Repealer –** All ordinances or parts of ordinances of the Borough of Jessup in conflict with the provisions of this Ordinance be, and the same are, hereby repealed to the extent of that conflict.

5. **Remaining Terms** – All remaining terms and provisions of the Jessup Borough Zoning Ordinance, as amended to date, shall remain in full force and effect and shall not otherwise be affected.

6. **Effective Date** – This Ordinance shall take effect within five (5) days from the date enacted herein or upon a date as otherwise prescribed by law.

**ENACTED AND ORDAINED** on this _____ day of _____, 2018 at a duly advertised public hearing of Jessup Borough Council.

Jessup Borough Council

By:_____
President

_____
Attest:  Secretary

Examined and Approved this _____ day of _____, 2018

_____
Joseph Buckshon
Mayor of Jessup

Approved as to form.

_____
Christopher J. Szewczyk, Esq.
Borough Solicitor



Borough of Jessup
LACKAWANNA
COUNTY

DRAFT
August 9, 2018
Zoning Map Changes
Exhibit A

Changed to the R-2
Medium Density
Residential District

To Remain R-1

Changed to the IAC
Interchange Activity
Center District

NOTE A = the Boundary between the
R-1 and the IAC District shall
be 700 feet from the center
of the railroad right-of-way.

SOURCE:
Esri and PASDA.

Feet
0        800

## LEGAL NOTICE

Notice is hereby given of the intent of Jessup Borough Council to vote on an Ordinance entitled "An Ordinance Amending Ordinance Number 3 of 1991, As Amended, Entitled the 'Jessup Borough Zoning Ordinance', Amending The Borough of Jessup Zoning Map and IAC Dimensional Requirements" at its public meeting to be held on October 1, 2018, at 7:00 P.M. at the Jessup Borough Building, 395 Lane Street, Jessup, PA. Notice is also given that Jessup Borough Council will hold a public hearing on the proposed amendment prior to voting on enactment at 7:00 P.M. on said date. The proposed amendment would do the following: 1) change a portion of land currently zoned as M-1A on the Jessup Borough Zoning Map to R-2 and IAC and 2) set IAC dimensional requirements for building regulations. The land to be rezoned from M-1A to R-2 and IAC is land within the following borders: near Hill Street, the Casey Highway/Route 6, the Lackawanna River, and the border of Archbald Borough. A complete copy of the full text of the ordinance, including the proposed map, can be obtained by contacting the Jessup Borough Secretary Monday through Friday between the hours of 8:00 A.M. and 4:00 P.M.

Christopher J. Szewczyk, Esquire
Solicitor, Borough of Jessup

EXHIBIT "E"

The Scranton Times    (Under act P.L. 877 No 160. July 9,1976)
Commonwealth of Pennsylvania, County of Lackawanna

JESSUP BOROUGH
395 LANE ST
JESSUP PA 18434-1440

Account # 6381
Order # 82315982
Ad Price: 364.90

LEGAL NOTICE BOROUGH OF J
Ann Marie Fortese
Being duly sworn according to law deposes and says that (s)he is Billing clerk
for The Scranton Times, owner and publisher of The Scranton Times, a newspaper
of general circulation, established in 1870, published in the city of Scranton,
county and state aforesaid, and that the printed notice or publication hereto
attached is exactly as printed in the regular editions of the said newspaper
on the following dates:

03/11/2019  03/18/2019

Affiant further deposes and says that neither the affiant nor The Scranton Times
is interested in the subject matter of the aforesaid notice or advertisement
and that all allegations in the foregoing statement as time, place and
character or publication are true _Ann Marie Fortese_

Sworn and subscribed to before me
this 30th day of April   A.D., 2019

_Sharon Venturi_
(Notary Public)

Commonwealth of Pennsylvania - Notary Seal
Sharon Venturi, Notary Public
Lackawanna County
My commission expires February 12, 2022
Commission number 1254228
Member, Pennsylvania Association of Notaries

**LEGAL NOTICE
BOROUGH OF JESSUP**

Notice is hereby given that Jessup Borough Council will hold a public hearing on an Ordinance entitled An Ordinance Amending Ordinance Number 3 of 1991, As Amended, Entitled the Jessup Borough Zoning Ordinance, Amending The Borough of Jessup Zoning Map and IAC Dimensional Requirements on March 26, 2019 at 7:00 P.M. at the Jessup Borough Building, 395 Lane Street, Jessup, PA. The proposed amendment would do the following: 1) change a portion of land currently zoned as M-1A on the Jessup Borough Zoning Map to R-2 and IAC and 2) set IAC dimensional requirements for building regulations. The land to be rezoned from M-1A to R-2 and IAC is land within the following borders: near Hill Street, the Casey Highway/Route 6, the Lackawanna River, and the border of Archbald Borough. A complete copy of the full text of the ordinance, including the proposed map, can be obtained by contacting the Jessup Borough Secretary Monday through Friday between the hours of 8:00 A.M. and 4:00 P.M.

Christopher J. Szewczyk, Esquire
Solicitor, Borough of Jessup

EXHIBIT "F"

# The Scranton Times   (Under act P.L. 877 No 160. July 9,1976)
## Commonwealth of Pennsylvania, County of Lackawanna

JESSUP BOROUGH
395 LANE ST
JESSUP PA 18434-1440

Account # 6381
Order # 82324145
Ad Price: 119.20

LEGAL NOTICE BOROUGH OF J
Ann Marie Fortese
Being duly sworn according to law deposes and says that (s)he is Billing clerk
for The Scranton Times, owner and publisher of The Scranton Times, a newspaper
of general circulation, established in 1870, published in the city of Scranton,
county and state aforesaid, and that the printed notice or publication hereto
attached is exactly as printed in the regular editions of the said newspaper
on the following dates:

04/03/2019

Affiant further deposes and says that neither the affiant nor The Scranton Times
is interested in the subject matter of the aforesaid notice or advertisement
and that all allegations in the foregoing statement as time, place and
character or publication are true _____

Sworn and subscribed to before me
this 30th day of April   A.D., 2019

_____
(Notary Public)

Commonwealth of Pennsylvania - Notary Seal
Sharon Venturi, Notary Public
Lackawanna County
My commission expires February 12, 2022
Commission number 1254228
Member, Pennsylvania Association of Notaries

**LEGAL NOTICE**

**BOROUGH OF JESSUP
SPECIAL MEETING**

Legal notice is hereby given that the Jessup Borough Council will hold a special meeting on April 10, 2019 at 7:00 P.M. at the Jessup Borough Building, 395 Lane Street, Jessup, PA to conduct general business and for the purpose of voting on "An Ordinance Amending Ordinance Number 3 of 1991, As Amended, Entitled The "Jessup Borough Zoning Ordinance", Amending the Borough of Jessup Zoning Map and IAC Dimensional Requirements". The public is invited to attend.

Mia Stine
Secretary

The Scranton Times    (Under act P.L. 877 No 160. July 9,1976)
Commonwealth of Pennsylvania, County of Lackawanna

JESSUP BOROUGH
395 LANE ST
JESSUP PA 18434-1440

Account # 6381
Order # 82324126
Ad Price: 232.95

ORD #3 OF 2019
Ann Marie Fortese
Being duly sworn according to law deposes and says that (s)he is Billing clerk
for The Scranton Times, owner and publisher of The Scranton Times, a newspaper
of general circulation, established in 1870, published in the city of Scranton,
county and state aforesaid, and that the printed notice or publication hereto
attached is exactly as printed in the regular editions of the said newspaper
on the following dates:

04/03/2019

Affiant further deposes and says that neither the affiant nor The Scranton Times
is interested in the subject matter of the aforesaid notice or advertisement
and that all allegations in the foregoing statement as time, place, and
character or publication are true *Ann Marie Fortese* .

Sworn and subscribed to before me
this 30th day of April    A.D., 2019

*Sharon Venturi*
(Notary Public)

Commonwealth of Pennsylvania - Notary Seal
Sharon Venturi, Notary Public
Lackawanna County
My commission expires February 12, 2022
Commission number 1254228
Member, Pennsylvania Association of Notaries

**LEGAL NOTICE**

**BOROUGH OF JESSUP
ORDINANCE #3 OF 2019**

"AN ORDINANCE AMENDING
ORDINANCE NUMBER 3 OF
1991, AS AMENDED, ENTITLED
THE "JESSUP BOROUGH
ZONING ORDINANCE",
AMENDING THE BOROUGH OF
JESSUP ZONING MAP AND IAC
DIMENSIONAL REQUIREMENTS

The Jessup Borough Council is con-
sidering the adoption of "An Ordi-
nance Amending Ordinance Num-
ber 3 of 1991, As Amended, Entitled
The 'Jessup Borough Zoning Ordi-
nance', Amending the Borough of
Jessup Zoning Map and IAC Dimen-
sional Requirements" at a special
meeting of Council to be held on
April 10, 2019 at 7:00 P.M. The pro-
posed amendment would do the fol-
lowing: 1) change a portion of land
currently zoned as M-1A on the Jes-
sup Borough Zoning Map to R-2 and
IAC and 2] set IAC dimensional re-
quirements for building regulations.
The land to be rezoned from M-1A
to R-2 and IAC is land within the fol-
lowing borders: near Hill Street, the
Casey Highway/Route 6, the Lack-
awanna River, and the border of
Archbald Borough. A complete copy
of the full text of the ordinance, in-
cluding the proposed map, can be
obtained by contacting the Jessup
Borough Secretary Monday through
Friday between the hours of 8:00
A.M. and 4:00 P.M.

Christopher J. Szewczyk, Esquire
Solicitor, Borough of Jessup

EXHIBIT "G"

**BOROUGH OF JESSUP**
**LACKAWANNA COUNTY, PENNSYLVANIA**
**ORDINANCE No. 3-2019**

**AN ORDINANCE AMENDING ORDINANCE NUMBER 3 OF 1991, AS AMENDED,**
**ENTITLED THE "JESSUP BOROUGH ZONING ORDINANCE", AMENDING THE**
**BOROUGH OF JESSUP ZONING MAP AND IAC DIMENSIONAL REQUIREMENTS**

**WHEREAS,** the Borough of Jessup is a duly ordained and existing political subdivision organized under the laws of the Commonwealth of Pennsylvania, particularly, the Pennsylvania Borough Code; and

**WHEREAS,** the Borough of Jessup has in effect Ordinance Number 3 of the year of 1991, otherwise known as the "Jessup Borough Zoning Ordinance" as amended to date; and

**WHEREAS,** Jessup Borough Council has duly discussed, legally advertised and held public hearings in accordance with the Pennsylvania Municipalities Planning Code as well as said Ordinance of its intention to amend said Ordinance in accordance with the terms and conditions outlined herein.

**NOW, THEREFORE,** be it hereby ordained and enacted by the Jessup Borough Council pursuant to the authority granted to it under the laws of the Commonwealth of Pennsylvania, as follows:

1. **Zoning Map** -  The Borough of Jessup Zoning Map is hereby revised as shown on Exhibit A, dated August 9, 2018.

2. **IAC District Dimensional Requirements** - Section 3.235 of the Zoning Ordinance, regarding building regulations for the IAC district, is replaced with the following:

   "In the IAC district, residential uses shall comply with the requirements for the R-2 district in Schedule I-B, and non-residential uses shall comply with the requirements for the C-2 district in Schedule II-C."

3. **Severability** – The provisions of this Ordinance are severable.  If any part of this Ordinance is declared to be unconstitutional, illegal, or invalid for whatever reason, the remaining provisions shall be unaffected and same shall remain in full force and effect. Only those provisions deemed invalid shall be stricken.

4. **Repealer** – All ordinances or parts of ordinances of the Borough of Jessup in conflict with the provisions of this Ordinance be, and the same are, hereby repealed to the extent of that conflict.

5. **Remaining Terms** – All remaining terms and provisions of the Jessup Borough Zoning Ordinance, as amended to date, shall remain in full force and effect and shall not otherwise be affected.

6. **Effective Date** – This Ordinance shall take effect within five (5) days from the date enacted herein or upon a date as otherwise prescribed by law.

**ENACTED AND ORDAINED** on this _10ᵗʰ_ day of _April_, 2019 at a duly advertised public hearing of Jessup Borough Council.

Jessup Borough Council

By _Gerald G Crinelli_
President

Attest: Secretary

Examined and Approved this _10ᵗʰ_ day of _April_, 2019

Joseph Buckshon
Mayor of Jessup

Approved as to form.

Christopher J. Szewczyk, Esq.
Borough Solicitor

**Borough of Jessup**
**LACKAWANNA COUNTY**

**DRAFT**
**August 9, 2018**
**Zoning Map Changes**
**Exhibit A**

Changed to the R-2
Medium Density
Residential District

To Remain R-1

Changed to the IAC
Interchange Activity
Center District

NOTE A = the Boundary between the
R-1 and the IAC District shall
be 700 feet from the center
of the railroad right-of-way.

SOURCE:
Esri and PASDA.

0      550      Feet

Urban Research & Development Corporation

EXHIBIT "H"

# BOROUGH OF JESSUP

**Lackawanna County**

395 Lane Street
Jessup, PA 18434
Website: jessupborough.com

Phone: 570-489-0411
Fax: 570-489-6899
Email: jessupborough@comcast.net

May 1, 2019

Pompey Coal Company
4000 4th Street
Suite 3
Moosic, PA 18507

RE:   **Application to the Jessup Borough Planning Commission**

To Whom It May Concern:

Your land development application was duly filed on April 24, 2019. Pursuant to Section 204(d)(1) of the SALDO, the Chairperson conducted a completeness review. No application shall be deemed complete unless and until all items specified in Section 204 are submitted. If a submission is incomplete, the Chairperson shall notify the applicant within seven (7) days and indicate the deficiencies.

Your submission is deficient for the following reasons:

1. Failure to comply with Jessup Borough SALDO Section 204(c)(2)(c) in that the submission failed to include six (6) copies of the planning module for land development as required by Chapter 71 of the PA Sewage Facilities Act.

2. Failure to comply with Jessup Borough SALDO Section 204(g)(2)(a)(17)(j) in that the submission did not have a proposed layout of fire hydrants in accordance with SALDO Section 402(k) as amended.

Therefore, because the application is deficient pursuant to the Borough's SALDO, said application is rejected. Please correct the deficiencies indicated and submit a new, complete plan.

Thank you.

Very truly yours,

*Paula Ralston Nenish*
*Chairperson, Jessup Planning Commission*

cc:   David Lopatka, Reuther + Bowen Engineering

# BOROUGH OF JESSUP

### Lackawanna County

395 Lane Street
Jessup, PA 18434
Website: jessupborough.com

Phone: 570-489-0411
Fax: 570-489-6899
Email: jessupborough@comcast.net

Signature:

Received by: Barbara Slra

Date: 5|3|19.

Borough of Jessup
LACKAWANNA COUNTY
395 LANE STREET
JESSUP, PA. 18434

Tempest Oil Company
4400 4th Street, Ste 3
Wilsonic, PA 12507

