## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| POMPEY COAL COMPANY, | |
| Plaintiff, | CIVIL ACTION NO. 3:20-cv-00358 |
| v. | (SAPORITO, M.J.) |
| BOROUGH OF JESSUP, et al., | |
| Defendants. | |

## **MEMORANDUM**

This is a federal civil rights action concerning the adoption and application of a local land use ordinance. It was originally commenced in state court by the filing of a writ of summons on April 24, 2019. (Doc. 2.) The action was removed to federal court by the defendants on February 28, 2020. (Doc. 1.)

The plaintiff, Pompey Coal Company ("Pompey Coal"), seeks damages and declaratory relief against the Borough of Jessup (the "Borough") and seven current or former members of its Borough Council, each of whom is named as a defendant in both his or her personal and official capacities. In its amended complaint (Doc. 10), Pompey Coal claims that the defendants adopted a land use ordinance, Ordinance 3 of 2019 ("Ordinance 3"), and re-zoned its property in an unconstitutional

and tortious manner.

The defendants, appearing jointly through counsel, have moved to dismiss the plaintiff's amended complaint. (Doc. 17.) That motion is fully briefed and ripe for decision. (Doc. 18; Doc. 25; Doc. 31.) For the reasons stated below, the motion will be granted and the amended complaint will be dismissed, but with leave to amend.

## I.   FACTUAL BACKGROUND

The Borough of Jessup is an incorporated borough located in Lackawanna County, Pennsylvania. It is governed by a seven-member borough council, along with an elected mayor. The Borough consists of 6.75 square miles of established residential, commercial, and industrial zones, with development governed by a comprehensive plan for development adopted in 1995.[1]

Pompey Coal is a Pennsylvania business corporation that owns land within the Borough that was zoned "M-1A," a designation that permitted manufacturing and other industrial use. William "Billy" Rinaldi is Pompey Coal's president.

---

[1] It is our understanding that a new comprehensive plan has since been adopted. This dispute arises out of re-zoning decisions made prior to adoption of the superseding comprehensive plan.

On April 13, 2016, Pompey Coal sold 65.35 acres of land it owned within the Borough's M-1A manufacturing zone to Lackawanna Energy, LLC ("Lackawanna Energy"), which subsequently constructed an electrical power plant on that property. The defendants were allegedly outraged by this sale.

Pompey Coal owns an additional 198 acres of land within the Borough's M-1A business park. In the spring of 2018, Pompey Coal began negotiations with Northpoint Development, LLC ("Northpoint") for potential sale of its remaining property within the Borough. Northpoint was interested in developing the land into a distribution center based on its close proximity to railroad, highway, and air transportation.

In the late spring or early summer of 2018, Borough Council president Gerald Crinella allegedly told members of the Borough Council and members of the public that "Billy Rinaldi has enough money," and that the Borough needed to change the zoning ordinance to stop Pompey Coal from selling its land to other unpopular industrial businesses. At the same time, the defendants were engaged in negotiations to provide tax incentives to assist the Trammell Crow Company ("Trammell Crow") in its purchase of 92 acres of commercial land space within the Borough's

M-1A business park to create the Valley View Trade Center.

In July 2018, the defendants began to consider re-zoning and re-mapping parts of the M-1A business park, including the remaining land owned by Pompey Coal. These initial discussions were allegedly "outside the public purview."

On July 31, 2018, the Borough entered into a contract with the Urban Research and Development Corporation ("URDC") to prepare a new comprehensive plan and zoning ordinance for the Borough. The contract with URDC established a 16-month period for development of this new comprehensive plan and zoning ordinance, including public meetings, county review, drafting, and workshops prior to presentment of the draft comprehensive plan and zoning ordinance.

Notwithstanding this contractual timeline, the plaintiff alleges that URDC was directed by the seven individual defendants, without legislative authority from the Borough Council, to produce a draft zoning ordinance and map. This draft zoning ordinance and map, which was later adopted as Ordinance No. 3, proposed to rezone Pompey Coal's property from its existing M-1A industrial zoning classification to an "R-2" residential zoning classification and an "IAC" interchange activity

center zoning classification.[2] This proposed change in zoning of the Pompey Coal property would effectively block any sale to Northpoint, and the defendants allegedly knew and intended as much. URDC produced the draft zoning ordinance and map to the Borough August 9, 2018—nine days after the Borough and URDC entered into the contract providing for a 16-month process to produce an updated comprehensive plan and zoning ordinance for the Borough. Four days later, on August 13, 2018, the defendants forwarded the draft zoning ordinance and map to the Lackawanna County planning commission for review; it was also submitted to the Borough's own planning commission for review.

On August 22, 2018, without any input from Pompey Coal, owner of the affected property, the Borough planning commission "approved" the draft zoning ordinance and map.[3] Subsequently, on August 27, 2018,

_____

[2] The proposed rezoning also affected the property previously conveyed from Pompey Coal to Lackawanna Energy.

[3] The nature and significance of this "approval" by the Borough planning commission is not entirely clear from allegations of the amended complaint. As with the plaintiff's characterization of the county planning commission's evaluation of this same draft zoning ordinance and map as a "rejection" of the proposal, *see infra* note 4, this "approval" of it might be more accurately characterized as a recommendation that the draft zoning ordinance and map be approved subsequently by the Borough Council. *See* 53 P.S. § 10609(c).

the county planning commission provided its evaluation of the proposed amendment to the Borough's zoning ordinance and map, advising that the proposed changes were inconsistent with the Borough's existing comprehensive plan, which designated the land for manufacturing use. The county planning commission further advised that the rezoning of the affected property might be premature in light of the comprehensive plan update process the Borough had recently undertaken, and that the rezoning might be challengeable in court.[4]

On August 30, 2018, the Borough solicitor wrote to Pompey Coal to inform it that a public hearing on the proposed zoning change would be held on October 1, 2018. On September 5, 2018, an attorney representing Pompey Coal wrote to notify the Borough solicitor that it objected to any change in zoning that would impact Pompey Coal's property. In particular, Pompey Coal's letter noted that a change from a M-1A

---

[4] In its amended complaint, the plaintiff characterizes the county planning commission's evaluation as "rejection" of the draft zoning ordinance and map, but the attached exhibit referenced in support of this allegation is an "evaluation report" by the county planning commission that provides only "comments" on the proposed zoning ordinance amendment. Moreover, the applicable state statute expressly provides that a proposed municipal zoning ordinance amendment be submitted to the county planning agency for its review and *recommendations*, not its approval or rejection. *See* 53 P.S. § 10609(e).

classification to R-2 and IAC classification would impose a severe and substantial financial impact on the development of the property. The letter suggested that the zoning change would constitute a deprivation of property, a regulatory taking for which just compensation was required, and impermissible "spot zoning." On September 26, 2018, an attorney representing Lackawanna Energy likewise objected to the proposed amendment to the Borough zoning ordinance and map. According to the amended complaint, no hearing was held on October 1, 2018.

On October 1, 2018, Northpoint agreed to purchase approximately 183 acres of Pompey Coal's M-1A-zoned land within the Borough for $3.5 million. Pompey Coal and Northpoint agreed to a sixty-day due diligence period prior to signing a full agreement of sale.

On March 25, 2019, the Borough Council held a hearing on the draft amendments to the Borough zoning ordinance and map, at which Pompey Coal appeared and raised objections to the amendment. Prior to the hearing, a notice of hearing was published in the March 11, 2019, and March 18, 2019, editions of The Scranton Times, a newspaper of general circulation.

On April 10, 2019, the Borough Council adopted Ordinance No. 3,

amending the Borough's zoning ordinance and map, re-zoning Pompey Coal's property from a M-1A zoning classification to R-2 and IAC zoning classifications. Prior to the hearing, a notice of hearing was published in the April 3, 2019, edition of The Scranton Times. As noted in the amended complaint, the Borough did not adopt an updated comprehensive plan prior to adopting Ordinance No. 3.

Earlier that same day, Pompey Coal submitted a land development plan to the Borough in preparation for its sale of land to Northpoint. The land development plan proposed two warehouses to be built within the property owned by Pompey Coal. On April 24, 2019, the Borough planning commission reviewed Pompey Coal's land development plan and voted to permit it to supplement its submission, rejecting a motion to reject it as technically defective. On May 20, 2019, notwithstanding the planning commission vote, the Borough secretary forwarded a letter to Pompey Coal's attorney rejecting the land development plan, signed by the secretary on behalf of the planning commission chair.

As a result of the Borough Council's passage of Ordinance No. 3, Pompey Coal alleges that it has been unable to finalize an agreement of sale of the property to Northpoint because the property is no longer zoned

M-1A and the landowner would not be permitted to develop the two warehouses Northpoint desired to build.

On April 24, 2019, Pompey Coal commenced the instant civil action by filing a writ of summons in the court of common pleas, docketed there as *Pompey Coal Company v. Borough of Jessup*, Case No. 2019-02461 (Lackawanna Cty. (Pa.) C.C.P.). (Doc. 2.) Pompey Coal filed its original state-court complaint on February 7, 2020. (Doc. 2-1.) The action was removed by the defendants to federal district court on February 28, 2020, and Pompey Coal filed its amended complaint in this federal civil action on March 30, 2020. (Doc. 1; Doc. 10.)[5]

On May 7, 2019, Pompey Coal commenced a second state-court action, *Pompey Coal Company v. Borough of Jessup*, Case No. 2019-02735 (Lackawanna Cty. (Pa.) C.C.P.), by filing a notice of procedural appeal in the court of common pleas, which challenged the validity of the Borough's adoption of Ordinance No. 3 under provisions of the Pennsylvania

---

[5] A district court, of course, may properly take judicial notice of state court records, as well as its own. *See* Fed. R. Evid. 201; *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 498–99 (3d Cir. 1997); *Pennsylvania v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967). Each of the state-court records referenced in this paragraph was also attached as an exhibit to the defendants' notice of removal, filed in this action.

Municipal Planning Code and the Pennsylvania Borough Code. (Doc. 18-1; Doc. 18-2.)

On May 30, 2019, Pompey Coal commenced a third state-court action, *Pompey Coal Company v. Borough of Jessup*, Case No. 2019-03224 (Lackawanna Cty. (Pa.) C.C.P.), by filing a notice of appeal in the court of common pleas, which challenged the rejection of Pompey Coal's land development plan by the Borough planning commission. (Doc. 18-3; Doc. 18-4.)[6]

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure[7] authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a

---

[6] *See supra* note 5. Each of the state-court records referenced in this paragraph was also attached as an exhibit to the defendants' brief in support of their motion to dismiss, filed in this action.

[7] Although the issue of *Younger* abstention implicates the court's exercise of jurisdiction over a case, the Third Circuit has noted that "[d]ismissal on abstention grounds without retention of jurisdiction is in the nature of a dismissal under Fed. R. Civ. P. 12(b)(6)." *Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1206 n.18 (3d Cir. 1992); *see also PDX N., Inc. v. Comm'r N.J. Dep't of Labor & Workforce Dev.*, 978 F.3d 871, 881 n.8 (3d Cir. 2020) (suggesting that *Younger* abstention is properly considered under Rule 12(b)(6) or Rule 12(c)), *petition for cert. filed*, No. 20-1327 (U.S. Mar. 19, 2021). Thus, we consider this abstention argument under the Rule 12(b)(6) standard, rather than Rule 12(b)(1).

motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F.

Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III.   DISCUSSION

The amended complaint is comprised of eight counts. In Count I, the plaintiff asserts a § 1983 retaliation claim under the Fourteenth Amendment, contending that the defendants retaliated against Pompey Coal for the exercise of its constitutional right to own and use property by adopting and implementing the new zoning ordinance and map. In Count II, the plaintiff asserts § 1983 substantive and procedural due process claims under the Fourteenth Amendment, contending that the defendants' adoption and implementation of the new zoning ordinance and map was arbitrary and capricious, and it deprived Pompey Coal of its protected property rights without due process of law. In Count III, the plaintiff asserts a § 1983 equal protection claim, contending that the new zoning ordinance and map treated Pompey Coal differently from other similarly situated property owners without a compelling state interest. In Count IV, the plaintiff asserts a § 1983 or § 1985 civil conspiracy claim, contending that the defendants conspired to violate Pompey Coal's

federal civil rights.[8] In Count V, VI, and VII, the plaintiff asserts state-law civil conspiracy and intentional interference with existing and prospective contractual relations claims. In Count VIII, the plaintiff asserts a state-law claim that the adoption and implementation of the new zoning ordinance and map were in violation of state statutes governing the adoption of local zoning ordinances. For relief, the plaintiff seeks declaratory judgment and an award of compensatory and punitive damages.

## A. Abandoned Claims

We note at the outset that, in its brief in opposition, the plaintiff has expressly conceded that it may not recover punitive damages from the Borough and the individual defendants in their official capacities, as a matter of law. (Doc. 21 n.5.) It has also conceded and expressly withdrawn its state-law claims that the defendants violated the notice requirements of the Pennsylvania Municipal Planning Code, 53 P.S.

---

[8] On its face, Count IV asserts a conspiracy to violate civil rights under 42 U.S.C. § 1985, but the plaintiff's brief in opposition to dismissal asserts that this was a typographical error, arguing that this claim should be treated instead as a civil conspiracy under § 1983. We address this particular claim under both statutes.

§§ 10609, 10107, and the Pennsylvania Borough Code,[9] 8 Pa. Cons. Stat. Ann. § 3301.2, as set forth in Count VIII of the amended complaint. (*Id.* at 23.) Accordingly, these claims will be dismissed.

### B. *Younger* Abstention

We turn then to the question of whether we should abstain from exercising jurisdiction over this federal civil action pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), in deference to the two other civil actions by the plaintiff seeking judicial review of the adoption and application of Ordinance No. 3, both of which remain pending in state court.

In *Younger*, the Supreme Court of the United States held that, absent extraordinary circumstances, federal courts should refrain from enjoining pending state criminal prosecutions. *See id.* at 43–44. Since then, the Supreme Court has extended *Younger* abstention to include "particular state civil proceedings that are akin to criminal prosecutions or that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013) (citations omitted); *see also New Orleans Pub. Serv., Inc. v. Council of*

---

[9] The plaintiff's brief references the "Jessup Borough Code," but the statutory citation is to the Pennsylvania Borough Code.

*City of New Orleans* ("*NOPSI*"), 491 U.S. 350, 368 (1989)).

> Circumstances fitting within the *Younger* doctrine, we have stressed, are "exceptional"; they include, as catalogued in *NOPSI*, "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function."

*Sprint*, 571 U.S. at 73 (quoting *NOPSI*, 491 U.S. at 367–68); *see also NOPSI*, 491 U.S. at 368 (including in this last category civil contempt orders and requirements for the posting of bond pending appeal).

Of particular relevance here, *Younger* does not "require[] abstention in deference to a state judicial proceeding reviewing legislative or executive action." *NOPSI*, 491 U.S. at 368. The claims raised by the plaintiff in this case solely concern legislative action—the consideration and adoption of a local land use ordinance and zoning map—and executive action—the planning commission's enforcement of the ordinance in connection with its consideration and rejection of Pompey Coal's land development plan. The related state court actions in favor of which the defendants ask us to abstain are not criminal prosecutions or quasi-criminal civil enforcement proceedings, nor do they implicate Pennsylvania's interest in enforcing the orders and judgments of its

courts.[10] *See Selig v. N. Whitehall Twp. Zoning Hearing Bd.*, Civil Action No. 17-4504, 2018 WL 1942510, at *6 (E.D. Pa. Apr. 24, 2018) (finding *Younger* abstention with respect to local zoning decisions inappropriate under *Sprint*); *see also Gwynedd Props., Inc. v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1203 (3d Cir. 1992) (admonishing "district courts not to dismiss claims hastily merely because they may involve land use issue"); *Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 748 (3d Cir. 1982) ("[T]he mere presence of land use issues should not trigger a mechanical decision to abstain."); *Godfrey v. Upland Borough*, 246 F. Supp. 3d 1078, 1094 (E.D. Pa. 2017) ("[D]isputes touching on a state's land use policies, . . . although doubtless related to important state interests, do not necessarily warrant abstention."). *See generally Sprint*, 571 U.S. at 72 ("Abstention is not in order simply because a pending state-court proceeding involves the same subject matter.").

---

[10] As noted above, Pompey Coal has expressly withdrawn its state municipal planning code and borough code claims in this case, conceding that litigating these claims here would be duplicative of its separate state-court actions for judicial review of the planning commission's rejection of its land development plan and for judicial review of Ordinance No. 3 itself. But even if these claims were not abandoned, it is doubtful that the pending state-court actions for judicial review of the Borough's legislative and executive actions would constitute the sort of "exceptional circumstances" to which *Younger* abstention applies.

Accordingly, we decline to abstain from exercising jurisdiction in this case pursuant to *Younger*.

## C. Federal Civil Rights Claims

Pompey Coal brings its federal civil rights claims, set forth in Counts I, II, III, and IV,[11] under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, the plaintiff must establish that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights

---

[11] *See supra* note 8.

complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

### 1. Fourteenth Amendment Retaliation Claim

In Count I, the plaintiff asserts a § 1983 retaliation claim. To plead a § 1983 retaliation claim, a plaintiff must allege: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Section 1983 retaliation claims are typically brought under the First Amendment. *See id.* at 298 n.6 (finding no § 1983 claim for retaliation arising under the Fourteenth Amendment's equal protection clause); *accord R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 439–40 (6th Cir. 2005); *Watkins v. Bowden*, 105 F.3d 1344, 1354–55 (11th Cir. 1997); *Long v. Laramie Cty. Cmty. Coll. Dist.*, 840 F.2d 743, 752 (10th Cir. 1988). *But see Higgins v. Beyer*, 293 F.3d 683, 694–95 (3d Cir. 2002) (referencing due process in reinstating claim that plaintiff suffered retaliation for the exercise of his constitutionally protected right of access

to the courts).

Regardless, the amended complaint here specifically alleges that the defendants adopted and implemented Ordinance No. 3, re-zoning Pompey Coal's remaining property within the Borough, in retaliation for its April 2016 sale of a parcel of land to Lackawanna Energy. The amended complaint characterizes the April 2016 sale of land as a constitutionally protected exercise of its right to own, use, develop, and sell its  real property—a right purportedly arising under the Fourteenth Amendment. But it is *state law* that creates the property rights protected by the Fourteenth Amendment. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1997); *Hazzouri v. W. Pittston Borough*, 416 F. Supp. 3d 405, 415 (M.D. Pa. 2019); *see also DeKalb Stone, Inc. v. Cty. of DeKalb*, 106 F.3d 956, 959 (11th Cir. 1997) ("It is well established that land use rights, as property rights generally, are state-created rights.") (citing *Roth*, 408 U.S. at 577). Some federal constitutional rights may touch on these state-created property rights. For example, the Fourteenth Amendment protects against the deprivation of these state-created property rights without due process of law, the Fifth Amendment

protects against governmental taking of property without just compensation, and the First Amendment may protect certain uses of property implicating, *inter alia*, the right to free association or free exercise of religion.[12] But the right to own or use property itself does not implicate the exercise of a substantive federal constitutional right. *See Tucker Indus. Liquid Coatings, Inc. v. Borough of E. Berlin*, 656 Fed. App'x 1, 6 (3d Cir. 2016) ("[The] use of the property does not implicate a separately protected constitutional right . . . ."); *cf. Nat'l W. Life Ins. Co. v. Commodore Cove Improvement Dist.*, 678 F.2d 24, 26 (5th Cir. 1982) ("The right freely to alienate real property is not a 'fundamental right' that calls for application of strict scrutiny."). *See generally* Charles H. Clarke, *The Owl and the Takings Clause*, 25 St. Mary's L.J. 693, 709 ("The constitutional right to own and use land . . . is not an enumerated constitutional right."); *id.* at 722 ("A federal constitutional right to own and use property . . . does not exist."). Thus, the amended complaint has failed to allege any constitutionally protected conduct in support of its § 1983 retaliation claim.

---

[12] We note that the plaintiff has not asserted a Fifth Amendment takings claim in this action. As we have noted, it does assert Fourteenth Amendment substantive and procedural due process claims.

The plaintiff's attempts to recast this claim in its brief as a First Amendment retaliation claim, suggesting there—somewhat circularly—that the defendants' adoption and implementation of Ordinance No. 3 was motivated by Pompey Coal's "standing up to the rogue legislative process employed by the [d]efendants in drafting and promoting the zoning ordinance." (Doc. 25, at 16.) But "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); *see also Damiano v. Scranton Sch. Dist.*, 135 F. Supp. 3d 255, 279 (M.D. Pa. 2015); *Adv. Fluid Sys., Inc. v. Huber*, 28 F. Supp. 3d 306, 331 n.14 (M.D. Pa. 2014); *Sites v. Nationstar Mortg. LLC*, 646 F. Supp. 2d 699, 712 (M.D. Pa. 2009). Although "[a] party does not need to plead specific legal theories in the complaint, as long as the opposing party receives notice as to what is at issue in the lawsuit," *Elec. Constr. & Maint. Co., Inc. v. Maeda Pac. Corp.*, 764 F.2d 619, 622 (9th Cir. 1985), the § 1983 retaliation claim articulated in the plaintiff's counseled amended complaint clearly and unequivocally asserts that the defendants retaliated against Pompey Coal *for its sale of property* to Lackawanna Energy, and it does not plead sufficient facts to support a

plausible claim that the defendants retaliated against Pompey Coal for its exercise of any First Amendment rights. To the extent such facts can be marshaled, the plaintiff may attempt to plead a plausible First Amendment retaliation claim in a second amended complaint.

Accordingly, Count I of the amended complaint will be dismissed.

### 2. *Fourteenth Amendment Substantive Due Process Claim*

In Count II, the plaintiff asserts a § 1983 substantive due process claim. Substantive due process protects against arbitrary government action, both at the executive and legislative levels. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998). Pompey Coal contends that the defendants acted in an arbitrary fashion by adopting Ordinance No. 3, rezoning Pompey Coal's property from M-1A classification to R-2 and IAC classifications, and by rejecting Pompey Coal's land development plan.

The first step in evaluating a substantive due process claim is to determine whether the plaintiff has alleged a property interest protected by the Fourteenth Amendment's due process clause. *See Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008); *Giuliani v. Springfield Twp.*, 238 F. Supp. 3d 670, 695 (E.D. Pa. 2017), *aff'd*, 726 Fed. App'x 118 (3d Cir. 2018). Here, the plaintiff owns a parcel of land affected by the Borough's

adoption of the new zoning ordinance and map and its application of the zoning ordinance and map in rejecting a land development plan submitted to the Borough planning commission for approval. This is sufficient to establish a property interest entitled to due process protection. *See Chainey*, 523 F.3d at 219 ("[O]wnership is a property interest worth of substantive due process protection."); *Giuliani*, 238 F. Supp. 3d at 695; *Flanders v. Dzugan*, 156 F. Supp. 3d 648, 665 (W.D. Pa. 2016).

Next, we must determine the applicable substantive legal standard for evaluating whether the government's action violated substantive due process. The Third Circuit has distinguished between legislative and executive actions when faced with a substantive due process claim. *See Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006). Here, the plaintiff presents both a facial challenge to the Borough's adoption of a zoning ordinance and map—a legislative act—and the application of that zoning ordinance and map by the Borough planning commission's rejection of the plaintiff's land development plan—an administrative or executive act.

We start with the legislative act—the adoption of Ordinance No. 3.

As the Third Circuit has observed, "federal judicial interference with a state zoning board's quasi-legislative decisions, like invalidation of legislation for 'irrationality' or 'arbitrariness,' is proper *only if the governmental body could have had no legitimate reason for its decision.*" *Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1034 (3d Cir. 1987) (emphasis in original). Thus, to state a substantive due process claim with respect to a legislative act, a plaintiff must "allege facts that would support a finding of arbitrary or irrational legislative action by the [municipality]." *Id.* at 1035. Here, Pompey Coal has alleged that the adoption of Ordinance No. 3, re-zoning its property from an M-1A industrial classification to less permissive R-2 residential and IAC mixed-use classifications, was inconsistent with the then-existing Borough comprehensive plan. But, as in *Pace*, "[t]his shows only a change of legislative position, not irrationality." *See id*. The amended complaint also alleges that the adoption of this new zoning ordinance and map was motivated, at least in some part, by Pompey Coal's April 2016 sale of a parcel of land to Lackawanna Energy for the construction of a power plant, which outraged the defendants. As in *Pace*, the facts alleged here by the plaintiff suggest that one of the purposes of this legislative change

was to "curb industrial development," and thus, as pleaded, this case merely "involves a difference of opinion on how much industrial development is in the best interests of the [Borough] and how that quantum of industrial development should be achieved." *Id.* at 1035 & n.8. Based on the allegations of the amended complaint, one can easily articulate a rational connection between the adoption of the new zoning ordinance and map and the legitimate purpose of curbing industrial development. *See id.* at 1035.

We turn then to the executive act—the rejection of Pompey Coal's land development plan. "Government [executive] action does not violate substantive due process when merely prompted by an 'improper motive.'" *Giuliani*, 238 F. Supp. 3d at 696. Rather, "executive action violates substantive due process only when it shocks the conscience." *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 399–400 (3d Cir. 2003). "While there is no 'calibrated yard stick' upon which to measure such conduct, the Supreme Court has recognized that 'only the most egregious official conduct' qualifies." *Giuliani*, 238 F. Supp. 3d at 696; *see also Lewis*, 523 U.S. at 846, 847. "[T]his test is designed to avoid converting federal courts into super zoning tribunals." *Eichenlaub*

*v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004).

> In [*Eichenlaub*], the Court of Appeals provided the lower courts with some guidance on what qualifies as conscience-shocking behavior in the land use context, including: evidence of "corruption or self-dealing," the hampering of development in order to interfere with otherwise constitutionally-protected activity, municipal action reflecting "bias against an ethnic group," or evidence indicating a "virtual taking" of the claimant's property. By the same token, the Court of Appeals listed examples of conduct that is not sufficiently egregious or outrageous, such as: applying certain regulations to one parcel of property but not to others, making unannounced or unnecessary inspections of the property, delaying permits and approvals, improperly increasing tax assessments or "maligning or muzzling" claimants.

*Giuliani*, 238 F. Supp. 3d at 696 (quoting *Eichenlaub*, 385 F.3d at 286) (citation and internal brackets omitted); *see also Flanders*, 156 F. Supp. 3d at 668.

Here, the amended complaint has alleged that the defendants applied a pending or newly adopted zoning ordinance that conflicted with the Borough's existing comprehensive plan, that it treated the plaintiff differently from at least one other nearby property owner, and failed to comply with state procedural laws that governed the notice and hearing

required for municipalities to amend their zoning ordinances and maps.[13] The exhibits attached to the amended complaint, however, include the written letter from the Borough planning commission chair informing Pompey Coal that its land development plan had been rejected as deficient. The letter cited Pompey Coal's failure to comply with provisions of the Borough's subdivision and land development ordinance ("SALDO"), which required the submission of additional copies of a planning module required by the Pennsylvania Sewage Facilities Act and the submission of a proposed layout of fire hydrants required by the SALDO itself. (Doc. 10-8.) The amended complaint simply contains no allegations that rise above the level of an ordinary zoning dispute to the level of "conscience shocking" conduct by the defendants in connection with the rejection of Pompey Coal's land development plan. *See Giuliani*, 238 F. Supp. 3d at 697; *see also Giuliani*, 726 Fed. App'x at 123 (finding no substantive due process violation where "there is no evidence of corruption or self-dealing,

---

[13] The amended complaint also appears to imply some personal animus by one of the defendants, Borough president Crinella, who does not appear to sit on the planning commission. But even if attributed to the planning commission and its decision to reject Pompey Coal's land development plan, personal or political animus is not sufficient to meet the "shocks the conscience" standard. *See Tucker*, 656 Fed. App'x at 6–7; *Flanders*, 156 F. Supp. 3d at 670.

such as bribery or an attempt by a [municipal] official to acquire the property for himself or herself"); *E. Rockhill Twp. v. Richard E. Pierson Materials Corp.*, 386 F. Supp. 3d 493, 499 (E.D. Pa. 2019) ("Absent claims of corruption, self-dealing, bias against an ethnic group, or intent to interfere with constitutionally-protected activity, the Third Circuit and district courts have hesitated to find official behavior in the land use context conscience-shocking.").

Accordingly, Count II of the amended complaint will be dismissed with respect to the plaintiff's substantive due process claim.

### 3. Fourteenth Amendment Procedural Due Process Claim

In Count II, the plaintiff also asserts a § 1983 procedural due process claim. The plaintiff bases this claim on the defendants failure to strictly comply with various procedural requirements imposed by state law.

"A procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process of law." *McLaughlin v. Forty Fort Borough*, 64 F. Supp. 3d 631, 639 (M.D. Pa. 2014); *see also Giuliani*, 238 F. Supp. 3d at 690. For the reasons given in

the preceding section, it is clear that the plaintiff's ownership of the affected property satisfies the first stage of this inquiry.

With respect to the second stage of this inquiry, Pompey Coal contends that its procedural due process rights were violated because the defendants initially met "outside the public purview" for initial discussions regarding the re-zoning of Pompey Coal's property, in violation of state open-meeting laws. It further contends that the defendants failed to properly advertise the proposed ordinance prior to the public meetings at which it was considered—it argues that the defendants improperly calculated the 7- and 14-day pre-meeting periods, publishing notice of the hearings 6 and 13 days beforehand instead. Finally, it contends that these non-public discussions and the defendants' failure to provide adequate notice under these state laws denied it the notice and opportunity to be heard that procedural due process requires.

But it is well-established "that mere violation of a state statute does not infringe the federal Constitution, and that state rather than federal courts are the appropriate institutions to enforce state rules." *United States v. Laville*, 480 F.3d 187, 192 (3d Cir. 2007) (internal quotation marks and brackets omitted). State open meeting laws confer no right to

be heard upon any individual; the only purpose of requiring open meetings is to assure public accountability of governmental decisionmakers. *Skepton v. Bucks Cty.*, 613 F. Supp. 1013, 1021–22 (E.D. Pa. 1985) (dismissing procedural due process claim based on violation of Pennsylvania open meeting and "sunshine" laws). Moreover, "a municipality's mere failure to comply with the time limitation in a statute does not implicate a deprivation of constitutional due process rights," particularly where the plaintiff has suffered no demonstrable prejudice as a result of the technical defect. *Gladstone Partners, LP v. E. Union Twp.*, 26 A.3d 542, 549 (Pa. Commw. Ct. 2011) (holding that, in the absence of any evidence of prejudice to the appellant, "publication of the proposed ordinance six days before [a township supervisor's meeting at which the zoning ordinance was adopted] substantially complied with the 7-day time limitation, and otherwise met the statutory requirements"); *cf. Dennis v. Dejong*, 557 Fed. App'x 112, 118 (3d Cir. 2014) ("Although the petition was not filed in strict compliance with the time required by state law, the question of 'what process is due' for purposes of the Due Process Clause is a matter of federal constitutional law, not state law."); *Gibson v. Pa. Pub. Utilities Comm'n*, No. 1:15-cv-

00855, 2015 WL 3952777, at *7 (M.D. Pa. June 18, 2015) (finding that, in the absence of any alleged prejudice, a state administrative law judge's issuance of an initial decision one day after a 90-day statutory period expired was patently insufficient to establish an unreasonable delay). Also, notwithstanding the plaintiff's characterization of the facts in its brief, the allegations of the amended complaint clearly demonstrate that Pompey Coal received advance notice of the March and April 2019 Borough Council public meetings at which Ordinance No. 3 was considered and adopted, and that Pompey Coal in fact attended and voiced its objections to adoption of the new zoning ordinance and map.

Finally, we note that "the focus in procedural due process claims is on the adequacy of the *remedial* procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest." *Giuliani*, 726 Fed. App'x at 122 (emphasis added); *see also K.S.S. v. Montgomery Cty. Bd. of Comm'rs*, 871 F. Supp. 2d 389, 397–98 (E.D. Pa. 2012). "[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body." *Giuliani*, 726 Fed. App'x at 118.

> In the context of land use disputes, the Court of Appeals has held that state and municipal officials are constitutionally obliged to offer a means by which individuals may challenge zoning restrictions and other adverse land use decisions. . . . The Court of Appeals has expressly recognized that the Pennsylvania Municipalities Code provides a constitutionally adequate means for those aggrieved by a land use decision to challenge the action in administrative and judicial proceedings.

*Giuliani*, 239 F. Supp. 3d at 690. The plaintiff in this case has availed itself of this process, instituting state-court actions for judicial review of these same land-use actions by the Borough, which remain pending.

Accordingly, Count II of the amended complaint will be dismissed with respect to the plaintiff's procedural due process claim.

### 4. Fourteenth Amendment Equal Protection Claim

In Count III, the plaintiff asserts a § 1983 equal protection claim. The Supreme Court of the United States has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To state a claim under this theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the

defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). "These challenges fail when 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Highway Materials, Inc. v. Whitemarsh Twp.*, 386 Fed. App'x 251, 259 (3d Cir. 2010) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Notably, an equal protection claim is not 'a device to dilute the stringent requirements needed to show a substantive due process violation.'" *Giuliani*, 238 F. Supp. 3d at 701 (quoting *Eichenlaub*, 385 F.3d at 287).

"To be 'similarly situated,' parties must be 'alike in all relevant aspects.'" *Flanders*, 156 F. Supp. 3d at 677 (quoting *Perano v. Twp. of Tilden*, 423 Fed. App'x 234, 238 (3d Cir. 2011)).

> Thus, the proponent of the equal protection violation must show that the parties with whom he seeks to be compared have engaged in the same activity vis-à-vis the government entity without such distinguishing or mitigating circumstances as would render the comparison inutile. In cases involving zoning or land-use disputes, courts consider the similarity of the properties being compared, including their physical characteristics and their 'similarities in the eyes of a defendant."

*Giuliani*, 238 F. Supp. 3d at 702 (citation and internal quotation marks

omitted).

Here, beyond conclusory allegation that the ordinance "singles out Pompey Coal from other similarly situated classes of property owners" (Doc. 10 ¶ 79), the plaintiff has no facts whatsoever upon which to base a plausible claim that it was treated differently from others similarly situated.

> When alleging the existence of similarly situated individuals, a plaintiff "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not survive dismissal. Instead, the plaintiff must allege "occasions or circumstances" or different treatment.

*Dunmore Sch. Dist. v. Pa. Interscholastic Athletic Ass'n*, ___ F. Supp. 3d ____, 2020 WL 7212874, at *12 (M.D. Pa. Dec. 7, 2020) (quoting *Young v. New Sewickley Twp.*, 160 Fed. App'x 263, 266 (3d Cir. 2006)) (alterations in original). The amended complaint mentions a purchase of land, also zoned M-1A, by Trammell Crow, which was allegedly treated more favorably than Pompey Coal's anticipated sale to Northpoint, but there are no facts alleged to suggest that these two land owners were in any way similarly situated. The amended complaint does not allege facts regarding the location of the parcel purchased by Trammell Crow, its

characteristics, the nature of Trammell Crow's use of that land, or that Trammell Crow sought approval of a similar land development plan.

Accordingly, Count III of the amended complaint will be dismissed.

### 5. Federal Civil Rights Conspiracy Claim

In Count IV, the plaintiff asserts what appears to be a § 1985 claim for conspiracy to violate civil rights.

> The elements of such a cause of action are: 1) a conspiracy; 2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; 3) an act in furtherance of the conspiracy; and 4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

*Strickland v. Mahoning Twp.*, 647 F. Supp. 2d 422, 430 (M.D. Pa. 2009). In its brief, the plaintiff concedes that it has not alleged any racial or class-based discriminatory animus, but contends that reference to § 1985 was a typographical error. (Doc. 25, at 17 n.2.)

The plaintiff contends that this claim should be considered as claim of conspiracy to violate civil rights under § 1983 instead. To state a claim for conspiracy under § 1983, "a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Marchese v.*

*Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000). As discussed in the preceding sections, the plaintiff has failed to state a claim with respect to its retaliation claim, its substantive and procedural due process claims, and its equal protection claims under § 1983. "There can be no civil conspiracy to commit an unlawful act under § 1983 where the plaintiff has not proven a deprivation of a constitutional or federal statutory right or privilege." *Rink v. Ne. Educ. Intermediate Unit 19*, 717 Fed. App'x 126, 141 (3d Cir. 2017).

Accordingly, Count IV of the amended complaint will be dismissed.

### 6. *Leave to Amend*

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In its brief, the plaintiff requested leave to amend if claims are dismissed, and it does not appear to us that amendment would be futile. Moreover, the defendants have stated in their reply brief that they do not

oppose the plaintiff's request for leave to amend. Therefore, the amended complaint will be dismissed with leave to amend.

### D. State-Law Tort Claims

In addition to the federal civil rights claims set forth in Counts I, II, III, and IV, the amended complaint has asserted state-law claims in Counts V, VI, and VII.[14] But where a district court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over state-law claims. 28 U.S.C. § 1367(c)(3). Whether the Court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state-law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. Finding nothing in the record to distinguish this case from the ordinary one, the balance of factors in this case "point[s]

---

[14] Based on the plaintiff's concession and withdrawal, we will dismiss its state law claim set forth in Count VIII.

toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n.7. Therefore, if a second amended complaint is not timely filed by the plaintiff, the remaining state-law claims will be remanded to the Court of Common Pleas of Lackawanna County, Pennsylvania, for further proceedings. *See Cohill*, 484 U.S. at 357.

IV. CONCLUSION

For the foregoing reasons, the motion to dismiss will be granted, and the plaintiff's federal civil rights claims will be dismissed with leave to amend.

An appropriate order follows.

Dated: March 31, 2021                    ***s/Joseph F. Saporito, Jr.***
                                          JOSEPH F. SAPORITO, JR.
                                          United States Magistrate Judge