## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

POMPEY COAL COMPANY,

      Plaintiff,

      v.

BOROUGH OF JESSUP, et al.,

      Defendants.

CIVIL ACTION NO. 3:20-cv-00358

(SAPORITO, M.J.)

### MEMORANDUM

This is a federal civil rights action concerning the adoption and application of a local land use ordinance. It was originally commenced in state court by the filing of a writ of summons on April 24, 2019. Doc. 2. The action was removed to federal court by the defendants on February 28, 2020.

The plaintiff, Pompey Coal Company ("Pompey Coal"), seeks damages and declaratory relief against the Borough of Jessup (the "Borough") and seven current or former members of its Borough Council, each of whom is named as a defendant in both his or her personal and official capacities. In its pleadings, Pompey Coal has claimed that the defendants adopted a land use ordinance, Ordinance 3 of 2019 ("Ordinance 3"), and rezoned its property in an unconstitutional and

tortious manner.

We previously considered and dismissed a similar set of federal civil rights claims asserted in the plaintiff's first amended complaint. *See Pompey Coal Co. v. Borough of Jessup*, Civil Action No. 3:20-cv-00358, 2021 WL 1212586 (M.D. Pa. Mar. 31, 2021), Doc. 32; *see also* Doc. 33. In doing so, we granted the plaintiff leave to amend. The plaintiff then filed the instant second amended complaint. Doc. 38.

The defendants, appearing jointly through counsel, have moved to dismiss the plaintiff's second amended complaint. Doc. 39. That motion is fully briefed and ripe for decision. Doc. 42; Doc. 47; Doc. 48. For the reasons stated below, the motion will be granted and the second amended complaint will be dismissed.

## I.   FACTUAL BACKGROUND

We have previously recounted the facts underpinning the plaintiff's claims in detail. *See Pompey Coal*, 2021 WL 1212586, at *1–*4. Generally the second amended complaint is substantively identical to the first amended complaint. The second amended complaint omits some of the

facts alleged in the first amended complaint,[1] and it alleges a handful of

new facts, which we will recount as necessary in our discussion below of

the federal legal claims asserted by the plaintiff in its second amended

complaint. But for the most part, the plaintiff's currently operative

factual allegations are substantially the same as those previously

alleged.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a

defendant to move to dismiss for "failure to state a claim upon which

---

[1] The second amended complaint appears to have omitted facts previously pleaded in support of state-law procedural claims that were withdrawn in favor of parallel state-court litigation. *See Pompey Coal*, 2021 WL 1212586, at *5 n.10. These state-law claims are also omitted from the second amended complaint. The plaintiff's state-court action for judicial review of the Borough Council's adoption of Ordinance 3 was dismissed by the state court of common pleas in July 2020, and the plaintiff does not appear to have appealed that decision. *See Pompey Coal Co. v. Borough of Jessup*, No. 2019-CV-2735, slip op. (Lackawanna Cnty. (Pa.) C.C.P. dismissed July 28, 2020). The plaintiff's state court action for judicial review of the Borough planning commission's rejection of its land development plan appears to remain pending before the state court of common pleas. *See Pompey Coal Co. v. Borough of Jessup*, No. 2019-CV-03224 (Lackawanna Cnty. (Pa.) C.C.P. filed May 30, 2019). A district court, of course, may properly take judicial notice of state court records, as well as its own. *See* Fed. R. Evid. 201; *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 498–99 (3d Cir. 1997); *Pennsylvania v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967).

relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F.

Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F.

Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III.   DISCUSSION

The second amended complaint is comprised of six counts—three

federal claims, numbered I through III, and three state-law claims,

numbered V through VII.[2] In Count I, the plaintiff asserts a § 1983

retaliation claim under the First Amendment, contending that the

defendants retaliated against Pompey Coal for the exercise of its First

Amendment right to oppose and criticize the new zoning ordinance and

map, Ordinance 3. In Count II, the plaintiff asserts a § 1983 takings

claim under the Fifth Amendment, contending that the adoption of

Ordinance 3 and rejection of a land development application by Pompey

Coal constituted an unconstitutional regulatory taking without just

compensation. In Count III, the plaintiff asserts a § 1983 equal protection

claim under the Fourteenth Amendment, contending that Ordinance 3

treated Pompey Coal differently from other similarly situated property

owners without a compelling state interest. In Count V, VI, and VII, the

---

[2] The second amended complaint skips Counts IV and V. This appears to be intended to maintain the same numbering used in prior iterations of its complaint with respect to its state-law claims.

plaintiff asserts state-law civil conspiracy and intentional interference with existing and prospective contractual relations claims. For relief, the plaintiff seeks declaratory judgment and an award of compensatory and punitive damages.

### A. Federal Civil Rights Claims

Pompey Coal brings its federal civil rights claims, set forth in Counts I, II, and III, under 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, the plaintiff must establish that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.

1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

### 1. First Amendment Retaliation Claim

In Count I, the plaintiff asserts a § 1983 retaliation claim. To plead a § 1983 retaliation claim, a plaintiff must allege: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

In its first amended complaint, Pompey Coal had premised its § 1983 retaliation claim on a purported Fourteenth Amendment due process right to own, use, develop, and sell its real property. But, as we noted in our prior opinion, "it is *state law* that creates the property rights protected by the Fourteenth Amendment. Some federal constitutional rights may touch on these state-created property rights. . . . But the right to own or use property itself does not implicate the exercise of a

- 7 -

substantive federal constitutional right." *Pompey Coal*, 2021 WL 1212586, at*6 (citations omitted).

In its second amended complaint, Pompey Coal has pivoted to assert a § 1983 retaliation claim based on its First Amendment free speech rights. With respect to the first element, the plaintiff points to its opposition and criticism of the proposed zoning ordinance and map, Ordinance 3, as the requisite constitutionally protected conduct. With respect to the second element, the plaintiff points to the Borough Council's adoption of the very same zoning ordinance and map as the requisite retaliatory action.

But it is the third element, causation, where the plaintiff's First Amendment claim falters. As alleged in the second amended complaint, the Borough Council first began to consider rezoning the property at issue in July 2018, apparently after learning that Pompey Coal was in negotiations to sell the property to a non-party, Northpoint, as the site of a new warehouse distribution center. On July 31, 2018, the Borough entered into a contract with a consultant to prepare a comprehensive plan and new zoning ordinance. Nine days later, on August 9, 2018, the consultant produced the draft zoning ordinance and map, which would

ultimately be adopted as Ordinance 3, in which adjacent parcels owned by Pompey Coal were rezoned from an M-1A Business Park classification to R-2 (Residential) and IAC (Interchange Activity Classification) classifications. On August 22, 2018, the Borough Council preliminarily approved the draft zoning ordinance and map provided by the consultant without any comment or input from Pompey Coal. *Two weeks later*, on September 5, 2018, an attorney for Pompey Coal wrote a letter to the Borough solicitor to express, *for the very first time*, Pompey Coal's objection and opposition to the rezoning legislation. A public hearing on the proposed zoning ordinance and map was held on March 25, 2019, at which time Pompey Coal appeared and again expressed its objection and opposition to the rezoning legislation. On April 10, 2019, the Borough Council formally enacted Ordinance 3.

The zoning ordinance and map ultimately adopted by the Borough Council was proposed by its consultant and preliminarily approved by the council *before* Pompey Coal is alleged to have first engaged in any protected speech. Pompey Coal argues that the Borough Council "streamlined" the process as well, but that purportedly expedited part of the process likewise *predated* the first plausibly alleged protected speech

by Pompey Coal in September 2018. Thus, the plaintiff has failed to plausibly allege a causal link between the constitutionally protected speech it has identified and the alleged retaliatory action by the Borough Council. *See Burt v. Lane*, Civil No. 1:16-CV-1180, 2017 WL 4681807, at *9 (M.D. Pa. Apr. 4, 2017) ("[B]y definition[,] adverse actions which *precede* some constitutionally protected behavior cannot be deemed to have been caused by that exercise of some constitutional right."); *cf. Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1301 (3d Cir. 1997) (finding no causal connection where adverse employment action *preceded* protected employee activity in a Title VII retaliation case), *abrogated on other grounds by Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53 (2006).

Accordingly, Count I of the second amended complaint, asserting a § 1983 First Amendment retaliation claim, will be dismissed for failure to state a claim upon which relief can be granted.

### 2. *Fourteenth Amendment Equal Protection Claim*

In Count III, the plaintiff reasserts the same § 1983 "class of one" equal protection claim raised in its first amended complaint. We previously dismissed this same claim because the first amended

complaint alleged "no facts whatsoever upon which to base a plausible

claim that it was treated differently from others similarly situated."

*Pompey Coal*, 2021 WL 1212586, at *11. As we explained:

> The [first] amended complaint mention[ed] a purchase
> of land, also zoned M-1A, by Trammell Crow, which was
> allegedly treated more favorably than Pompey Coal's
> anticipated sale to Northpoint, but there [were] no
> facts alleged to suggest that these two land owners
> were in any way similarly situated. The [first]
> amended complaint [did] not allege facts regarding the
> location of the parcel purchased by Trammell Crow, its
> characteristics, the nature of Trammell Crow's use of
> that land, or that Trammell Crow sought approval of a
> similar land development plan.

*Id.*

With respect to the plaintiff's equal protection claim, the second

amended complaint is substantively identical to the first amended

complaint. In addition to the Trammell Crow property, it now references

the Jessup Small Business Center and the Valley View Trade Center, all

of which allegedly "lie[] within a contiguous M-1A Business Park zone

with Pompey Coal's property," and all of which allegedly received tax

incentives to assist in development of their parcels. But the second

amended complaint still fails to allege any facts to support a plausible

inference that these properties and their owners are similarly situated to

Pompey Coal. The mere fact that all of these parcels were zoned M-1A is insufficient. *See id.* Indeed, as the February 2004 zoning map attached to the second amended complaint illustrates, much—if not most—of the geographic area of the Borough was classified M-1A under the prior zoning ordinance. *See* Second Am. Compl. Ex. A, Doc. 38-1.

As noted above, in addition to the facts alleged on the face of the second amended complaint, we may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322. But consideration of such materials further undermines the plaintiff's equal protection case.

"A court 'may, of course, take judicial notice of geography.'" *Ellis v. Montgomery Cnty.*, 267 F. Supp. 3d 510, 520 n.6 (E.D. Pa. 2017) (quoting *Boyce Motor Lines v. United States*, 342 U.S. 337, 344 (1952) (Jackson, J., dissenting); *see also United States v. Figueroa*, 349 Fed. App'x 727, 730 n.5 (3d Cir. 2009) (citing *Boyce Motor Lines*). The Borough of Jessup is bisected by the Casey Highway, U.S. Route 6. The Borough's residential population is concentrated in a low- and medium-density residential area northwest of the Casey Highway and adjacent to the Lackawanna River. The Jessup Small Business Center, the Valley View Trade Center, and

the Trammell Crow property are located on the southeast side of the Casey Highway, in a higher elevation area separated from the Borough's residential areas. So is the Lackawanna Energy Center, a power plant built on a parcel sold by Pompey Coal in 2016, an unpopular move which allegedly serves as the genesis of the Borough's hostility toward Pompey Coal. Higher elevation areas further to the southeast are largely undeveloped, including conservation lands.

Although it too was zoned M-1A at one time, the undeveloped property presently at issue is located on the opposite, *northwest* side of the Casey Highway, adjacent to the residential areas of the Borough. *See* Second Am. Compl. Ex. F, Doc. 38-5, at 4. Based on its geographic location, the rezoned Pompey Coal property is not "contiguous" to its alleged comparators, which are located on the opposite side of a major highway, away from residential areas of the Borough, nor is it similarly situated to them.

Accordingly, Count III of the second amended complaint, asserting a § 1983 Fourteenth Amendment equal protection claim, will be dismissed for failure to state a claim upon which relief can be granted.

### 3. *Fifth Amendment Takings Claim*

In Count II of the second amended complaint, the plaintiff asserts for the first time a § 1983 Fifth Amendment takings claim.

The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that government shall not take private property for public use without just compensation. *See* U.S. Const. amend. V; *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160 (1980). "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005). But government regulation "may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster," and "such 'regulatory takings' may be compensable under the Fifth Amendment." *Id.*

Here, the plaintiff contends that the new zoning ordinance and map, Ordinance 3, adopted by the Borough Council, and the Borough planning commission's rejection of the plaintiff's land development plan, constitute such a regulatory taking.

> For a regulatory taking, there are two distinct tests.
> The first is the so-called "per se" taking identified in

> *Lucas v. South Carolina Coastal Council*, [505 U.S. 1003, 1015 (1992)], pursuant to which "a regulation which 'denies all economically beneficial or productive use of land' will require compensation under the Takings Clause" unless the challenged limitations "inhere . . . in the restrictions that background principles of the State's law of property and nuisance already placed upon land ownership. This is a difficult test to satisfy: the court must find that the regulation forces the plaintiffs to "leave their property economically idle."

*Nekrilov v. City of Jersey City*, 528 F. Supp. 3d 252, 266–67 (D.N.J. 2021) (quoting *Murr v. Wisconsin*, 582 U.S. 383, 393, 405 (2017) (citations and brackets omitted), *aff'd*, 45 F.4th 662 (3d Cir. 2022). But the second amended complaint does not plausibly allege such a deprivation. Indeed, as the second amended complaint and attached exhibits implicitly acknowledge, one part of the property is eligible for medium-density residential use, and the other part of the property is eligible for mixed commercial and medium-density residential use. Thus, a per se regulatory taking is not at issue here.

Absent a *per se* taking, a plaintiff may attempt to demonstrate a taking under a second test:

> The second regulatory taking test is a more fluid evaluation known as the *Penn Central* test, which evaluates the alleged taking based on "a complex of factors," including "(1) the economic impact of the

regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed explications; and (3) the character of the governmental action."

*Id.* at 267 (quoting *Murr*, 582 U.S. at 393); *see also Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).

### a. Economic Impact of the Rezoning

It is beyond question that the Borough's adoption of the new zoning ordinance and map and its rejection of the plaintiff's land development plan has had some economic impact on the plaintiff by preventing it from consummating a $3.5 million sale agreement with Northpoint, which had intended to build a warehouse distribution center on the property.

But "a regulation that merely "adversely affect[s] economic values" is not sufficient to constitute a taking. *New Jersey v. United States*, 91 F.3d 463, 468 (3d Cir. 1996). As the Third Circuit has observed, "the Supreme Court 'has required compensation only in cases in which the value of the property was reduced *drastically.*'" *Nekrilov*, 45 F.4th at 674 (emphasis added) (quoting *Rogin v. Bensalem Twp.*, 616 F.2d 680, 692 (3d Cir. 1980)). The plaintiff has not alleged the precise diminution of value of the rezoned property. *See Nekrilov*, 528 F. Supp. 3d at 272. Nor has the plaintiff alleged a drastic reduction in the value of the property, such that

it would require compensation. *See Nekrilov*, 45 F.4th at 674.

Thus, we conclude that this first factor weighs against finding a compensable taking.

### b. Reasonable Investment-Backed Expectations

"The second *Penn Central* factor is the extent to which the regulation interferes with reasonable investment-backed expectations." *Cmty. Hous. Improvement Program v. New York City*, 492 F. Supp. 3d 33, 46 (E.D.N.Y. 2020). "Laws change, and there is no general right to governmental consistency over time." *Nekrilov*, 528 F. Supp. 3d at 274. "[D]istinct, investment-backed expectations are reasonable only if they take into account the power of the state to regulate in the public interest." *Pace Res., Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1033 (3d Cir. 1987). A plaintiff does not suffer a taking requiring compensation merely because "they have been denied the ability to exploit a property interest that they heretofore had believed was available for development." *Penn Cent.*, 438 U.S at 130. "Zoning regulations are the 'classic example' of permissible regulations that do not require compensation even where they prohibit the most beneficial use of the property." *Nekrilov*, 45 F.4th at 675 (quoting *Penn Cent.*, 438 U.S. at 125) (brackets and internal quotation marks

omitted). "To the extent Plaintiff[] argue[s] that a distinct investment-backed expectation can take the form of an expectation that zoning laws will remain unchanged during the life of their property ownership, such is not supported by   case law." *Laurel Park Cmty., LLC v. City of Tumwater*, 790 F. Supp. 2d 1290, 1301 (W.D. Wash. 2011); *see also Pa. Coal Co. v. Mahon*, 260 U.S. 393, 413 (1922) ("Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law."); *Cienega Gardens v. United States*, 503 F.3d 1266, 1288 (Fed. Cir. 2007) ("One important aspect of investment-backed expectations is whether, in the regulatory environment, it would be expected that the law might change to impose liability.").

Here, the second amended complaint fails to explain how the Borough's actions have interfered with Pompey Coal's reasonable investment-backed expectations.

> [T]he reasonable expectations prong . . . requires that the expectations be investment backed, and in this regard, further analysis is required. The first step of the analysis is to determine the actual investment that the [owner] made in the property. The second step is to determine the benefits that the owner[] reasonably could have expected at the time [it] entered into the investment. The third step is to determine what

expected benefits were denied or restricted by the government action.

*Cienega Gardens*, 503 F.3d at 1289; *see also Cmty. Hous. Improvement Program*, 492 F. Supp. 3d at 46 ("[T]he nature of [the property owner's] investment-backed expectations depends on when they invested in the property and what they expected *at that time*.") (emphasis added). "Finally, the claimant must establish that it made the investment because of its reasonable expectation of receiving the benefits denied or restricted by the government action, rather than the remaining benefits." *Cienega Gardens*, 503 F.3d at 1289.

Although the plaintiff's brief in opposition argues, in conclusory fashion, that the introduction and passage of Ordinance 3 "undermined" Pompey Coal's investment-backed expectations, the second amended complaint itself makes no reference whatsoever to these investment-backed expectations, nor does it allege any facts whatsoever to support any reasonable inference about any such investment-backed expectations. The plaintiff's brief notes that the property has ready access to essential infrastructure, such as railroad tracks, a highway thru-way, and electrical lines, but there is no argument and no factual allegations to indicate that Pompey Coal constructed or otherwise made

any actual *investment* into this infrastructure. Neither the second amended complaint nor the plaintiff's opposition brief articulates any facts whatsoever regarding Pompey Coal's acquisition of the property at issue, when it was acquired, the cost of acquisition and any improvements made to the property in reliance on prior, more permissive zoning classification, Pompey Coal's expectations for use of the property at the time of acquisition—including whether the construction of a warehouse distribution center or a similar use was a part of those expectations—or whether those expectations were reasonable in light of the general and plenary regulatory authority of state and local governments.[3] As the Federal Circuit has observed:

> [I]t is impossible to determine whether the owner['s] expectations were reasonable without knowing the

_____

[3] In its second amended complaint, the plaintiff alleges only that Pompey Coal was formed in 1931 and is now a real estate holding company. Based on public records and commonly known local historical facts, we note that, in its earlier years, Pompey Coal was engaged in the business of anthracite coal mining, including the operation of a colliery and coal breaker in Jessup until the late 1960s. The 183-acre property at issue is the remainder of a larger parcel acquired by Pompey Coal in the 1940s. *See generally* Am. Compl., *Pompey Coal Co. v. Deloma Mining Co.*, No. 2002-CIVIL-2464 (Lackawanna Cnty. (Pa.) C.C.P. filed Jan. 4, 2005) (summarizing provenance of Pompey Coal property in Jessup), *available at* Lackawanna Cnty. (Pa.) Prothonotary, General Index, http://www.lpa-homes.org/LPA_Public_Inquiries/Views/CAXPY_Views/PYS500D.aspx (Case No. 2002-2464).

total value of the investment; its relationship to the
benefits available to the owner[], including any tax
benefits; and the anticipated benefits that were denied
or restricted by the government action.

*Cienega Gardens*, 503 F.3d at 1289; *see also id.* at 1288 ("[T]he burden is

on the owner[] to establish a reasonable investment-backed expectation

in the property at the time it made the investment.").

Thus, we conclude that this second factor weighs against finding a

compensable taking.

### c. *Character of the Government Action*

Finally, *Penn Central*'s third factor considers the character of the

governmental action. "When considering this factor, courts determine if

the government action is closer to a compensable 'classic taking' or to

'some public program adjusting the benefits and burdens of economic life

to promote the common good.'" *Tulio v. Lansdale Borough*, ___ F. Supp.

3d ___, 2023 WL 2432479, at *7 (E.D. Pa. Mar. 9, 2023), *appeal filed*, No.

23-1644 (3d Cir. Apr. 7, 2023).

As the Supreme Court itself observed in *Penn Central*,

in instances in which a state tribunal reasonably
concluded that "the health, safety, morals, or general
welfare" would be promoted by prohibiting particular
contemplated uses of land, this Court has upheld land-
use regulations that destroyed or adversely affected

recognized real property interests. Zoning laws are, of course, the classic example, which have been viewed as permissible governmental action even when prohibiting the most beneficial use of the property.

*Penn Cent.*, 438 U.S. at 125 (citations omitted).

In this case, Ordinance 3 rezoned a large swath of land adjacent to the Borough's core residential area, downzoning it from a more permissive M-1A classification, which broadly allowed industrial use, to more restrictive R-2 residential and IAC mixed use classifications. Due to the sheer size of Pompey Coal's land holdings, the new zoning ordinance affected only two property owners,[4] but it was clearly and expressly intended to increase the Borough's residential housing stock by promoting residential land use and complementary commercial land use in areas adjacent to the already-developed residential neighborhoods of Jessup Borough, while restricting industrial land uses generally incompatible with residential land use to the less developed area separated from that residential area by the Casey Highway. Based on the pleadings and judicially noticed facts, the new zoning ordinance and map at issue here, Ordinance 3, is a generally applicable public program

---

[4] The second amended complaint does not identify the other property owner.

seeking to adjust the benefits and burdens of economic life in order to promote the common good.

Thus, we conclude that this third factor weighs against finding a compensable taking.

### d. Conclusion

Weighing all three *Penn Central* factors, all three of which militate against finding a compensable taking, we are compelled to find that the second amended complaint fails to plausibly allege a compensable regulatory taking.

Accordingly, Count II of the second amended complaint, asserting a § 1983 Fifth Amendment takings claim, will be dismissed for failure to state a claim upon which relief can be granted.

### 4. *Leave to Amend*

The Third Circuit has instructed that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir.

2004). Having previously granted the plaintiff leave to amend, and the plaintiff having failed to cure the pleading deficiencies of its claims, the second amended complaint will be dismissed *without* leave to amend, as any further amendment appears to be futile.

## B. State-Law Tort Claims

In addition to the federal civil rights claims set forth in Counts I, II, and III, the second amended complaint has asserted state-law tort claims in Counts V, VI, and VII. But where a district court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over state-law claims. 28 U.S.C. § 1367(c)(3). Whether the Court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state-law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. Finding nothing in the record to distinguish this case from the ordinary one, the balance of factors in this case "point[s]

toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n.7. Therefore, upon dismissal of the plaintiff's federal civil rights claims, the remaining state-law claims will be remanded to the Court of Common Pleas of Lackawanna County, Pennsylvania, for further proceedings. *See Cohill*, 484 U.S. at 357.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss will be granted, the plaintiff's federal civil rights claims will be dismissed, and the plaintiff's state-law tort claims will be remanded to state court for any further proceedings.

An appropriate order follows.


Dated: May 4, 2023                     *s/Joseph F. Saporito, Jr.*
                                        JOSEPH F. SAPORITO, JR.
                                        United States Magistrate Judge